UNITED STATES of America, Appellee,

v.

Juvenal Martinez ALVARADO, Defendant-Appellant.

No. 389, Docket 28107.

United States Court of Appeals Second Circuit.

Argued June 12, 1963.

Decided Aug. 7, 1963.

Whitney North Seymour, Jr., New York City, for appellant.

Andrew T. McEvoy, Jr., Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for the S. D. of New York, Arnold N. Enker, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before MOORE, HAYS and MARSHALL, Circuit Judges.

HAYS, Circuit Judge.

Defendant appeals from a judgment of conviction, entered upon a jury verdict, for violations of the narcotics laws. 18 U.S.C. § 1403, 21 U.S.C. § 176a, 26 U.S.C. §§ 4741(a), 4742(a), 4744(a), 7237(a). He assigns as error the denial by Chief

Judge Sylvester Ryan of his motion to suppress certain evidence. We affirm on the authority of Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

The evidence shows that appellant Alvarado and his codefendant, Torres, both nationals of Panama then living in New York, wrote to one Byron Foreman in Panama, asking Foreman to send them some marihuana. Upon receiving Foreman's assent to the plan, Torres and appellant rented a post office box under the name Luis Sanchez. Torres wrote the name and address under which the box was rented on a matchbook cover, and gave it to appellant. Torres and appellant instructed Foreman to forward the marihuana to the post office box and sent him a money order for $80 signed by appellant.

Thereafter Torres and appellant were advised by Foreman that the narcotics were being shipped. The narcotics had, however, been discovered by customs officials in Florida during a routine examination of air parcel post from abroad. The package was resealed and forwarded to New York for delivery to the addressee by the postal authorities, and the post office box was placed under surveillance. When Torres came to the post office box and removed the package he was arrested. He thereupon agreed to cooperate with the authorities.

After Torres' arrest, Customs Agents, acting without a warrant, went to appellant's apartment and upon identifying themselves as Federal agents, were invited by appellant to enter. Agent Cozzi asked appellant whether he was an American citizen, to which appellant replied that he was from Panama. Cozzi examined appellant's passport and concluded that appellant was in the country illegally. Leaving one of the agents in appellant's apartment, Cozzi went outside and telephoned the Immigration and Naturalization Service. He told the official on duty that he had come across a Panamanian who was in the country illegally, and "was wondering if [I.N.S. was] interested in sending up any officers."

Fifteen minutes later two Immigration investigators, Calemine and LaVeille, arrived outside appellant's apartment. Cozzi told them that it appeared that appellant had overstayed his leave in the United States. Calemine said, "Well, let's go up and see."

The officers entered appellant's apartment, where Calemine identified himself and questioned appellant regarding his stay in this country. The I.N.S. agents then arrested appellant, although they had no warrant for his arrest, and searched his apartment.

Appellant was asked whether he had any pay receipts from past employment. Appellant "fished" behind some photographs on the mantlepiece, and was observed by Calemine attempting to conceal a small object. The object, an address book, was seized, and was later found to contain Torres' name and address.

At this point Calemine asked that a window be opened. In the process of opening the window, an ashtray was overturned and a matchbook fell out. Agent Cozzi testified that "the defendant almost broke a leg getting over to pick it up." The matchbook contained the name and adress under which the post office box had been rented.

Appellant was arraigned on March 7, 1962, some 19 days later.

Appellant urges that his arrest was invalid because no warrant had been obtained, 8 U.S.C. § 1252(a), and, alternatively, because it was procured by Agent Cozzi as a subterfuge to permit a search of appellant's person and apartment for evidence to be used in a criminal prosecution. In support of the latter claim, appellant relies on the following statement contained in a letter from the Customs Bureau to the United States Attorney's office:

"Juvenal Martinez-Alvarado was arrested by Immigration officers at his residence on February 16, 1962 on information furnished by this office to the effect that he was in the United States illegally in overstaying a conditional entry. This action

was taken so that this office could develop additional evidence to arrest him for his part in the marihuana case."

The invalidity of the arrest, appellant submits, required that the evidence seized at his apartment be suppressed. Moreover, he urges, a handwriting sample taken during his unlawful nineteen day detention prior to his arraignment should also have been suppressed.

■ Appellant virtually conceded at the argument of the appeal that his first contention is without merit. An officer of the Immigration and Naturalization Service is authorized to arrest, without a warrant, "any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any * * * law or regulation [pertaining to immigration] and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a) (2). The arresting officers first learned that appellant was illegally in the country when they confronted him. They knew that appellant was also under investigation by customs officials. Under these circumstances, the district court properly concluded that the arresting officers had reason to believe that unless arrested appellant would be likely to escape before a warrant could be obtained.

■ We are required by the authority of Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), to hold that appellant's second contention must be rejected as well.

In the Abel case it appeared that Abel had been under investigation for espionage, but that the evidence the F.B.I. had gathered was concededly insufficient to justify Abel's arrest on espionage charges. The F.B.I. then informed the I.N.S. of its belief that Abel was in the country illegally. The I.N.S. was told that the F.B.I. was interested in Abel "in connection with espionage." 362 U.S. at 221, 80 S.Ct. at 688, 4 L.Ed.2d 668. F.B.I. agents went to Abel's hotel room without a warrant where they questioned him for about 20 minutes. Thereupon the F.B.I. agents signalled to the I.N.S. agents who were waiting in the next room. The I.N.S. agents, armed with an administrative warrant, arrested Abel and conducted the search which uncovered the items sought to be suppressed. The F.B.I. agents, although present, did not participate in the search. As Abel was preparing to accompany the I.N.S. officers, he was seen by one of them attempting to secrete some papers in the sleeve of his coat. These papers were seized. The F.B.I. conducted a final search of the room after Abel had been taken away.

The Supreme Court held that the arrest was valid, and that the evidence seized was admissible. "The test," the Court said, "is whether the decision to proceed administratively toward deportation was influenced by, and was carried out for, a purpose of amassing evidence in the prosecution for crime." 362 U.S. at 230, 80 S.Ct. at 692, 4 L.Ed.2d 668. The "crucial" question, the Court said, was:

> "*What the motive was of the I.N.S. officials who determined to arrest petitioner*, and whether *the I.N.S.* in doing so was not exercising its powers in the lawful discharge of its own responsibilities but was serving as a tool for the F.B.I. in building a criminal prosecution against petitioner * * *.*"

362 U.S. at 226, 80 S.Ct. at 690, 4 L.Ed. 2d 668 (emphasis supplied).

The following evidence was found to be dispositive.

> "[The] testimony by Noto [a Deputy Assistant Commissioner of the I.N.S.] that the interest of the I.N.S. in petitioner was confined to petitioner's illegal status in the United States; that in informing the I.N.S. about petitioner's presence in the United States the F.B.I. did not indicate what action it wanted the I.N.S. to take; that Noto himself made the decision to arrest petitioner and to commence deportation proceedings against him; that the F.B.I.

made no request of him to search for evidence of espionage at the time of the arrest; and that it was 'usual and mandatory' for the F.B.I. and I.N.S. to work together in the manner they did."

362 U.S. at 227, 80 S.Ct. at 691, 4 L.Ed. 2d 668. The evidence in the present case is, of course, strikingly similar.

Appellant seeks to distinguish the Abel case on the basis of the letter which we have quoted, indicating that Customs sought appellant's arrest by I.N.S. so that Customs "could develop additional evidence to arrest him for his part in the marihuana case." But it is clear that in Abel, the F.B.I. was similarly primarily interested in espionage. The clear purport of the holding and of the passages we have quoted is that this interest is immaterial, and that it is the "good faith" of the *arresting agency* that determines the validity of the arrest. There is in the present case absolutely no evidence that the I.N.S. was concerned with anything other than appellant's unlawful presence in the country. In the present case, as in Abel, the "Government" was interested in both violations, the I.N.S. in appellant's violation of the immigration laws, the Customs Bureau in his violation of the narcotics laws. The cooperation of the two agencies to secure appellant's arrest was permissible. Abel v. United States, supra, 362 U.S. at 228–229, 80 S.Ct. at 691–692, 4 L.Ed.2d 668.

Our decision that the arrest was valid disposes as well of appellant's contention that the nineteen day delay between his arrest on February 16 and his arraignment on March 7 was unreasonable, and that a handwriting sample taken from appellant during this allegedly unlawful custody should have been suppressed. As the arrest by I.N.S. was proper, appellant was properly in custody awaiting deportation proceedings during the following nineteen days. Custody was apparently shifted to the Attorney General on March 7. The sample was taken on the morning of that day, and appellant was arraigned promptly thereafter.

Finally, appellant urges that even if the arrest was lawful, the address book and matchbook cover which were seized were private papers and not proper subjects of seizure. Abel v. United States, supra, is again controlling.

"An arresting officer is free to take hold of articles which he sees the accused deliberately trying to hide. This power derives from the dangers that a weapon will be concealed, or that relevant evidence will be destroyed."

362 U.S. at 238, 80 S.Ct. at 696–697, 4 L.Ed.2d 668. Appellant's suggestion that the testimony of the arresting officers must have been "tailored" to fit the decision in Abel raises an issue of credibility, the assessment of which by the district court is binding upon us. United States v. Castelli, 306 F.2d 640 (2d Cir.), cert. denied, 371 U.S. 921, 83 S.Ct. 290, 9 L.Ed.2d 231 (1962).

We are grateful for the devoted and skillful service of assigned counsel for appellant.

Affirmed.