**Zoila CONTRERAS and Yolanda Siliezar, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 735, Docket 81–6186.**

United States Court of Appeals, Second Circuit.

Argued Feb. 10, 1982.

Decided March 2, 1982.

Juan Cartagena, New York City (Douglas Kramer and Baden, Kramer & Huffman, New York City, on the brief), for plaintiffs-appellants.

Ben Wiles, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Miles Tepper, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for defendant-appellee.

Before LUMBARD, NEWMAN and WINTER, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Zoila Contreras and Yolanda Siliezar appeal from a May 26, 1981 judgment of the District Court for the Eastern District of New York (Jacob Mishler, Judge), dismissing their claim for damages against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. The complaint sought damages for an allegedly unlawful warrantless arrest of plaintiffs and a warrantless search of their apartment by officers of the Immigration and Naturalization Service (INS).

INS officers received an anonymous tip that three persons living in a third-floor apartment in Brooklyn were illegal aliens. All three were described and one was identified. The officials determined to pursue their investigation by observing activity near the apartment building in question. Officers approached a woman (Siliezar) exiting the building who fit one of the descriptions and who stopped and turned when she saw the officers questioning a neighbor. After telling the officers that she was from Guatemala, she made a movement toward a passerby in an attempt to engage his attention. Siliezar then refused to answer any further questions and was taken into custody. As the officers and Siliezar then entered the apartment building, Siliezar broke away and frantically knocked on the door to a first-floor apartment and then again on the door to a second-floor apartment. She was then removed from the building.

Officer McAllister then went to the third-floor apartment and knocked on the door. Plaintiff Contreras opened the door dressed in a housecoat. Contreras walked into the public hallway and admitted that she had entered the country illegally. She told McAllister she had a passport. Contreras then indicated that she had no objection to the officer's entering her apartment but she refused to accompany him. With the assistance of a neighbor, Officer McAllister explained to Contreras that he wanted her to get her passport and to get dressed so that she could be processed as an illegal alien at INS. Once in the apartment, Officer McCarthy made a security check. No drawers or packages were opened. Other officers then entered; Officer Samborsky accompanied Contreras while she dressed. When Contreras motioned toward a box on a shelf of a closet, Officer Samborsky saw a passport and seized it as well as an unemployment booklet she had noticed under the passport.

The District Court found that the tip when taken together with the confirmation of some of the informant's information sufficed to create a reasonable suspicion that justified the stop of Siliezar for questioning. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Siliezar's unfamiliarity with English, her attempt to avoid questioning about her entry from Guatemala into the United States, her nervousness, her resemblance to the informer's description, and the corroboration of details of the anonymous tip elevated this suspicion to the level of probable cause. The District Court found probable cause for the arrest of Contreras based on her admission that she entered the United States illegally.

■ In order to recover damages, plaintiffs must first show that the warrantless arrests and search were unlawful. An INS officer's authority to arrest an individual without a warrant is defined by 8 U.S.C. § 1357(a)(2) (1976):

> (a) Any officer or employee of the [INS] ... shall have power without warrant—
>
> (2) to arrest any [illegal alien] ... if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration law] and is likely to escape before a warrant can be obtained for his arrest. ...

On appeal, plaintiffs do not contest that the officers had probable cause to believe that plaintiffs were in the country illegally. However, they contest the presence of the second prerequisite for a warrantless arrest of an illegal alien—reason to believe that the alien is likely to escape before a warrant can be obtained for his or her arrest. Because of the difficulty of making an on-the-spot determination as to the likelihood of escape without any opportunity to verify information provided or to conduct a full-scale interview, "an [INS] officer's determination will not be upset if there is any reasonable basis for it." *Marquez v. Kiley*, 436 F.Supp. 100, 108 (S.D.N.Y.1977). In *Ojeda-Vinales v. INS*, 523 F.2d 286, 288 (2d Cir. 1975) (*per curiam*), we said that a successful challenge to the arresting officers' reasonable belief of a likelihood of escape "could not be made" upon facts that indicated a clear-cut and undisputed violation

of immigration laws. The alien there admitted that he was a foreign national and a tourist, and his employer confirmed the fact of his employment. These circumstances established "a prima facie violation of conditions imposed on non-immigrant visitors, since the acceptance of unauthorized employment by a non-immigrant visitor is a ground for deportation. *See* 8 U.S.C. § 1251(a)(9)." *Ibid.* We understand *Ojeda-Vinales* to mean that when the alien's deportability is clear and undisputed, that circumstance alone may provide a sufficient basis for an INS officer to believe that escape is likely before a warrant can be obtained.

In this case Contreras acknowledged to the arresting officers that she had entered this country illegally. Her liability to deportation was as clear-cut and undisputed as in *Ojeda-Vinales.* As for Siliezar, her acknowledgement that she was from Guatemala, the absence of a claim of lawful status, and her attempt to evade custody satisfied the "likely to escape" criterion. Under all the circumstances, there was an adequate factual basis for the officers' determination that in light of their experience and training as INS officers they reasonably believed that both plaintiffs were likely to escape before they could secure an arrest warrant. *Ojeda-Vinales v. INS, supra; United States v. Alvarado,* 321 F.2d 336, 338 (2d Cir. 1963), *cert. denied,* 375 U.S. 987, 84 S.Ct. 522, 11 L.Ed.2d 474 (1964); *United States v. Reyes-Oropesa,* 596 F.2d 399 (9th Cir. 1979). Nor must the District Court's conclusion that there was such an adequate basis depend on explicit testimony by the officers as to their subjective beliefs about the likelihood of escape.[1] Their testimony about objective facts within their knowledge is sufficient support for a conclusion regarding the likelihood of escape. *Cf. United States v. Vital-Padilla,* 500 F.2d 641, 644 (9th Cir. 1974).

There is sufficient factual support for the District Court's finding that Contreras authorized the entry into the apartment for the purpose of affording her the opportunity to change clothes. *Cf. Washington v. Chrisman,* —— U.S. ——, ——, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982) (authorized entry to accompany defendant for purpose of obtaining identification). The subsequent searches were either consented to or legitimate security searches.

Plaintiffs have therefore not sustained their burden of proving that the officers' actions were unlawful—the initial requirement for recovery under the Federal Tort Claims Act.

Judgment affirmed.

---

1. Officer McAllister's testimony that he had only a minor concern that Contreras would escape when she left her apartment and walked into the public hallway pertains only to the officer's fear of escape at that moment and is not indicative of an unlikelihood of escape if the officers had left to secure a warrant.