**LAKE BUTLER APPAREL COMPANY, etc., et al., Plaintiffs,**

v.

**DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, etc., et al., Defendants.**

**No. 79–479 Civ–J–JHM.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 18, 1982.

Allen P. Clark, Jacksonville, Fla., for plaintiffs.

Frank A. Graham, Dept. of Agriculture & Consumer Services, Tallahassee, Fla., for defendants.

## MEMORANDUM OPINION

HODGES, District Judge.

This is an action for declaratory judgment, injunctive relief and damages brought by the Plaintiffs pursuant to 42 U.S.C. § 1983. The Plaintiffs claim that the Defendants, as officers or employees of the Florida Department of Agriculture and Consumer Services, have violated the Plaintiffs' Fourth Amendment rights by conducting certain vehicular searches pursuant to the Florida Agricultural Inspection Law embodied in Chapter 570, Florida Statutes.

The Court tried the declaratory judgment and equitable issues without a jury, and the bifurcated claims for damages (which were reserved for jury trial) have since been settled. See Order entered July 9, 1982. The case is thus ready for final adjudication.

The State of Florida long ago enacted a number of laws regulating the production, transportation and marketing of various agricultural commodities, both animal and vegetable, as well as related items such as seeds and fertilizers. See Chapters 573 through 604, Florida Statutes (1981). Responsibility for the enforcement of each of these laws is delegated to the Florida Department of Agriculture and Consumer Services (the Department).

With respect to the organization of the Department and its authority to carry out its mission of regulation and inspection under these laws, there are two statutes of particular relevance to this case. The first is Florida Statute § 570.44(3) (1981) which creates a "Bureau of Road Guards" within the Department and charges it with the duty "to operate and manage those road guard inspection stations of the state and to perform the general inspection activities relating to the movement of agricultural, horticultural, and livestock products . . ." The second statute, which is the one attacked in this litigation, is Florida Statute § 570.15 (1981):

570.15 Access to places of business and vehicles.—

(1)(a) The commissioner, inspectors, road guard inspection special officers, and such other employees and officers of the department, as designated by the commissioner in writing, shall have full access at all reasonable hours to all:

1. Places of business;
2. Factories;
3. Farm buildings;
4. Carriages;
5. Railroad cars;
6. Trucks;
7. Motor vehicles, except private passenger automobiles with no trailer in tow, travel trailers, camping trailers, and motor homes as defined in s. 320.01(1)(b)
8. Truck and motor vehicle trailers;
9. Vessels; and
10. All records or documents pertaining thereto

which are used or are of a type which could be used in the production, manufacture, storage, sale, or transportation within the state of any food product; any agricultural, horticultural, or livestock product; or any article or product with respect to which any authority is conferred by law on the department.

(b) If such access is refused by the owner, agent, or manager of any premises or by the driver or operator of any vehicle which an inspector or road guard inspection special officer has reason to believe is subject to inspection under this section, such inspector or officer may apply for, obtain, and execute a search warrant for regulatory inspection after stating under oath that:

1. He has reason to believe that the premises or vehicle is subject to inspection pursuant to paragraph (a);
2. The vehicle sought to be inspected has had reasonable notice to stop for inspection; and
3. The owner, agent, manager, driver, or operator of the premises or vehicle has refused access for regulatory inspection.

Application for a search warrant shall be made in the county in which the premises are located or, in the case of a vehicle to which access is refused, in the county in which such refusal occurs. The provisions of chapter 933, relating to probable cause for the issuance of search warrants, shall not apply to this section.

(c) Such departmental officers, employees, and road guard inspection special officers may inspect any premises or vehicle referred to in paragraph (a) and may examine and open any package or container of any kind containing or believed to contain any article or product which may be transported, manufactured, sold, or exposed for sale in violation of the provisions of this chapter, the rules of the department, or the laws which the department enforces and may inspect the contents thereof and take therefrom samples for analysis.

(2) It shall be unlawful for the driver of any vehicle, other than one exempted in subparagraph 7. of paragraph (a) of subsection (1), to pass any official road guard inspection station without first stopping and submitting the vehicle for inspection. A violation of this subsection shall constitute a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

Pursuant to these statutes the Department's Road Guard Bureau maintains a number of fixed inspection stations located on the major north-south highways in the upper part of the state near the Georgia border, including a station on I–75. Signs along the right-of-way typically direct "all trucks and all trailers" to stop for inspection. Some of the signs are addressed to "all trucks—trailers—pickups—vans." The Road Guard Bureau also utilizes roving inspectors on certain lesser highways.

The Plaintiffs are corporations and individuals who operate trucks which regularly pass through the Department's inspection stations. The corporate Plaintiffs are involved in weekly deliveries of textile products between establishments located in Lake Butler, Florida, and Folkston, Georgia, as well as other places; and the individual Plaintiffs, at the time of the specific incidents complained of, were employed by the corporate Plaintiffs to transport those

products by truck. None of the Plaintiffs are or were at any material time engaged in the transportation or carriage of agricultural, horticultural, livestock or food products.

The Defendants are all officers or employees of the Department who are responsible for, or participated in, the searches in question.

The parties' pretrial stipulation described in detail the undisputed circumstances surrounding five separate detentions or searches which form the factual matrix of the Plaintiffs' complaint. On each occasion one or more of the individual Plaintiffs was driving an enclosed truck or trailer carrying textile products or other non-agricultural items as manifested by a bill of lading which was available in the vehicle for inspection. In each instance when the Plaintiff stopped at the Department's inspection station a Road Guard demanded access to the interior of the enclosed vehicle, and permission was refused in the absence of a warrant. In four of the five instances described, the vehicle (and the driver) were then detained while a warrant was obtained and a search was made. On the other occasion the vehicle and its driver were released after being detained approximately two and a half hours; no warrant was obtained and no search was conducted.

These five detentions (and four searches) occurred during 1979 before a more recent amendment of Florida Statute § 570.15 to its present form as previously quoted. However, the Plaintiffs presented evidence at trial of additional searches made by the Department's Road Guard Bureau under the present statute after 1979; and, in addition, it was agreed in the pretrial stipulation (paragraph 15) that the types of searches to which the Plaintiffs had been subjected by the Defendants "in carrying out the inspection and enforcement procedures under Chapter 570, Florida Statutes, were performed and carried out and will continue to be performed and carried out in the future if not enjoined by this Court . . ."

Accordingly, the record discloses, and I find, that the Department is engaged pursuant to Florida Statute § 570.15 in a continuing program of conducting random stops and searches of motor vehicles, other than passenger cars and motor homes, for the purpose of enforcing the regulatory laws within its jurisdiction; but, due to the magnitude of the task, most vehicles otherwise subject to inspection under the terms of the statute are allowed to pass through the inspection stations without being detained or searched. The selection of specific vehicles to be searched is left to the unguided discretion of the Road Guards; and if a driver refuses to consent, a warrant is sought and obtained upon the mere showing that (a) the vehicle had notice to stop; (b) it is subject to inspection under the statute (i.e., it is a vehicle other than a passenger car or motor home); and (c) the operator has refused to consent. There is no requirement of "probable cause" or even a "reasonable suspicion" either in the initial selection of a target vehicle by the Road Guard or in the process leading to the issuance of a warrant.

The straightforward issue to be decided is whether vehicular searches conducted under those circumstances violate the Plaintiffs' Fourth Amendment rights.

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It is settled, of course, that the constraints of the Fourth Amendment are imposed upon the states by operation of the Fourteenth Amendment. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

It is also settled that motor vehicles are within the protection of the Fourth Amendment although, to be sure, a warrant may not be required to justify a vehicular search as in other cases. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). And in the case of fixed checkpoints maintained by law enforcement officers away from the border or its functional equivalent,[1] vehicles may be stopped for a brief period of time without probable cause or even a reasonable suspicion, *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), but they may not be searched after being stopped absent consent or the existence of probable cause. *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975).

At this stage of the analysis, therefore, it would seem that the state cannot stop *and search* vehicles, with or without a warrant, absent consent or "probable cause", i.e., the existence of sufficient trustworthy information to warrant a man of reasonable caution to believe that a criminal offense has been or is being committed. *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). There is, however, another line of authority to be considered; namely, the "administrative search" cases.

In *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the Court held that the Fourth Amendment is applicable to administrative "inspections" or searches even though the object of the governmental intrusion upon private property is the enforcement of a regulatory statute (such as a minimum housing ordinance) rather than the criminal laws. Accordingly, a warrantless search of either personal or commercial property for such purposes would be *per se* unreasonable within the meaning of the Fourth Amendment, and a warrant supported by a showing of probable cause would be required to justify such administrative searches. However, the Court also held that in the process of applying the ultimate constitutional standard of "reasonableness," attention should be focused upon the governmental interest to be served by the search, and that a given set of circumstances might afford "probable cause" to issue an administrative search warrant when the same circumstances would not rise to the level of "probable cause" justifying a criminal search warrant.

The Court has since amplified that concept in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), involving the inspection provisions of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 657(a). The Court there applied its decisions in *Camara* and *See,* and held the OSHA statute unconstitutional to the extent that it purported to authorize administrative searches without a warrant. Again, however, with respect to the showing of probable cause necessary to secure a warrant for such a search, the Court said (436 U.S. at 320–323, 98 S.Ct. at 1824–1826):

"[An official's] entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of [the regulatory statute] exist ... Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evi-

---

1. With respect to the international borders of the United States or their functional equivalents, routine vehicular searches are permissible (reasonable) without a warrant as a matter of self protection to exclude illegal aliens and contraband. *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Roving border patrols are treated differently and may not stop vehicles except upon "reasonable suspicion" arising from "specific articulable facts," *United States v. Brigno-* ni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Delaware v. Prouse, supra,* and such patrols may then search a vehicle only upon consent or the existence of probable cause. *Almeida-Sanchez v. United States, supra.* The "border search" authorities have little or no application in this case, however, because the Georgia-Florida border is not analogous to the international borders. *Torres v. Puerto Rico,* 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979).

dence of an existing violation, but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].' " Citing *Camara v. Municipal Court.*

\*      \*      \*      \*      \*      \*

"The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers ... A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the constitution, is authorized by statute, *and is pursuant to an administrative plan containing specific neutral criteria.*" (Emphasis supplied).

■  Clearly, in this case, the searches made by the Department's Road Guard Bureau are carried out in an effort to enforce the state of Florida's regulatory statutes governing agricultural commodities—an important state interest—and the rule of *Marshall v. Barlow's, Inc.,* should be applied.[2] The level of "probable cause" justifying a search will not require evidence that a violation of a specific statute has occurred. It will be sufficient if "reasonable legislative or administrative standards for conducting an inspection are satisfied"; or the inspection is made "pursuant to an administrative plan containing specific neutral criteria." That conclusion is of little comfort to the Department in this case, however, because it cannot be said that the statute, Section 570.15, or any existing administrative regulation, provide "reasonable standards" or "neutral criteria" for selecting or searching those few vehicles which are actually searched. Indeed, upon the posting of a sign notifying vehicles to stop, the net effect of the statute is to authorize a full

exploratory search of *any* truck, trailer or van whose owner refuses to consent.

It might be argued that *Marshall v. Barlow's, Inc.* is applicable only with respect to administrative searches conducted without a warrant, and since Florida Statute § 570.-15 requires a warrant upon the operator's refusal to give consent, the mandate of the Fourth Amendment is satisfied. It is true, of course, that *Marshall v. Barlow's, Inc.* involved warrantless searches, but the Court's decision in that case turned as much upon the constitutional requirement of "probable cause" as it did upon the necessity of a warrant; and it proceeded to describe the kind of probable cause which must be demonstrated. Indeed, in the case of motor vehicles as distinguished from real property like that involved in *Marshall v. Barlow's, Inc.,* the Fourth Amendment (as opposed to Section 570.15) will accommodate warrantless searches so long as probable cause exists. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

In *Torres v. Puerto Rico,* 442 U.S. 465, 473, 99 S.Ct. 2425, 2431, 61 L.Ed.2d 1 (1979) the Court said:

"In any event, health and safety inspections are subject to the Fourth Amendment warrant requirement *unless they fall within one of its recognized exceptions,* and must be based on a 'plan containing specific neutral criteria.' *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 323, 98 S.Ct. 1816, 1820, 1825, 56 L.Ed.2d 305 (1978)." (Emphasis supplied).

Similarly in *United States v. Mississippi Power & Light Co.,* 638 F.2d 899, 907 (5th Cir.1981), the Fifth Circuit held:

---

2. The Plaintiffs made some effort to prove that the Department's Road Guards are law enforcement officers (since they are authorized to bear arms and must meet the state's minimum training requirements in that respect); and that they sometimes conduct their searches on the basis of a suspicion that criminal contraband is present. There is no persuasive evidence, however, that the Department's Road Guard Bureau regularly conducts pretextual searches designed to enforce the criminal laws, rather than

the agricultural regulations in their charge, so that "probable cause" in the criminal sense should be required. While some individual searches are no doubt motivated by those law enforcement objectives, particularly in the absence of specific statutory or administrative guidelines, it must be assumed that most of the searches at issue are nothing more than they purport to be, i.e., good faith attempts to perform regulatory inspections.

"In [*Marshall v. Barlow's, Inc.*] the Supreme Court stated that OSHA was unconstitutional 'insofar as it purports to authorize inspections without a warrant *or its equivalent*'. 436 U.S. at 325, 98 S.Ct. at 1827, 56 L.Ed.2d at 319 (emphasis added). We take the italicized words to mean that a formal judicial warrant is not required in all administrative searches *if the enforcement procedures contained in the relevant statutes and regulations provide, in both design and practice, safeguards roughly equivalent to those contained in traditional warrants.*" (Emphasis supplied).

It must also be remembered that the Fourth Amendment itself provides that "no warrants shall issue but upon probable cause ...."

I therefore conclude, in summary, that neither Florida Statute § 570.15 nor any existing administrative regulation provide "reasonable legislative or administrative standards," or "specific neutral criteria," for the guidance of Road Guards in the selection of vehicles to be searched, or for the guidance of judicial officers in issuing warrants for such searches; and a mere showing that a truck, trailer or van—any truck, trailer or van—has had notice to stop, followed by the operator's refusal to consent to a warrantless search, although sufficient to satisfy the statute, is insufficient to satisfy the Fourth Amendment requirement of "probable cause" as interpreted in *Marshall v. Barlow's, Inc.* It follows that the random vehicular searches presently being conducted by the Department on that basis alone, with or without a warrant, are unconstitutional and must be enjoined. A separate order will be entered accordingly.

IT IS SO ORDERED.