462 So.2d 1096 (1985)
James William ROCHE, Petitioner,
v.
STATE of Florida, Respondent.
No. 65022.
Supreme Court of Florida.
January 24, 1985.
*1097 Fred Haddad of Sandstrom & Haddad, Fort Lauderdale, for petitioner.
Jim Smith, Atty. Gen. and Wallace E. Albritton, Asst. Atty. Gen. and Frank A. Graham, Resident Counsel, Dept. of Agriculture, Tallahassee, for respondent.
EHRLICH, Justice.
We examine the decision of the First District Court of Appeal, Roche v. State, 447 So.2d 890 (Fla. 1st DCA 1984), in light of a question certified as being of great public importance, pursuant to jurisdiction granted in article V, section 3(b)(4), Florida Constitution.
Roche, driving a van, failed to stop at an agricultural inspection station on Interstate 75. He was stopped by a Hamilton County deputy sheriff and ordered to return for inspection. At the station, an agricultural inspector discovered a locked compartment which Roche refused to open. The inspector neither saw nor smelled marijuana. Nonetheless, he procured a regulatory search warrant, pursuant to section 570.15, Florida Statutes (1980), and upon opening the compartment, discovered more than five hundred pounds of marijuana. After Roche and the van had been taken into custody, a flight bag belonging to Roche was found in the van. The police, without a warrant, opened the bag and discovered a calculator containing a list of weights corresponding to the bale numbers and weights.
Roche was tried and convicted on trafficking charges. He appealed on grounds (among others) that the trial court had erred in denying his motion to suppress the contraband as fruit of an illegal search, arguing that the basis for issuance of a regulatory search warrant did not fulfill the constitutional requirements of article I, section 12, Florida Constitution. The district court of appeal affirmed the trial court's decision.
In his petition for rehearing, Roche directed the court's attention to Lake Butler Apparel Co. v. Department of Agriculture and Consumer Services, 551 F. Supp. 901 (M.D.Fla. 1982), in which the United States District Court had declared section 570.15, Florida Statutes, unconstitutional. The First District Court of Appeal adhered to its original affirmance, but certified the *1098 following question as being of great public importance:
DOES SECTION 570.15, FLORIDA STATUTES, VIOLATE THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION IN THAT IT ALLOWS ADMINISTRATIVE SEARCHES WITHOUT A SHOWING OF `PROBABLE CAUSE' AND WITHOUT AN `ADMINISTRATIVE PLAN CONTAINING SPECIFIC NEUTRAL CRITERIA?'
447 So.2d at 891-92.
Section 570.15, Florida Statutes (1980) provides:
570.15 Access to places of business and vehicles. 
(1)(a) The commissioner, inspectors, road guard inspection special officers, and such other employees and officers of the department, as designated by the commissioner in writing, shall have full access at all reasonable hours to all:
1. Places of business;
2. Factories;
3. Farm buildings;
4. Carriages;
5. Railroad cars;
6. Trucks;
7. Motor vehicles, except private passenger automobiles with no trailer in tow, travel trailers, camping trailers, and motor homes as defined in s. 320.01(1)(b);
8. Truck and motor vehicle trailers;
9. Vessels; and
10. All records or documents pertaining thereto
which are used or are of a type which could be used in the production, manufacture, storage, sale, or transportation within the state of any food product; any agricultural, horticultural, or livestock product; or any article or product with respect to which any authority is conferred by law on the department.
(b) If such access is refused by the owner, agent, or manager of any premises or by the driver or operator of any vehicle which an inspector or road guard inspection special officer has reason to believe is subject to inspection under this section, such inspector or officer may apply for, obtain, and execute a search warrant for regulatory inspection after stating under oath that:
1. He has reason to believe that the premises or vehicle is subject to inspection pursuant to paragraph (a);
2. The vehicle sought to be inspected has had reasonable notice to stop for inspection; and
3. The owner, agent, manager, driver, or operator of the premises or vehicle has refused access for regulatory inspection.
Application for a search warrant shall be made in the county in which the premises are located or, in the case of a vehicle to which access is refused, in the county in which such refusal occurs. The provisions of chapter 933, relating to probable cause for the issuance of search warrants, shall not apply to this section.
(c) Such departmental officers, employees, and road guard inspection special officers may inspect any premises or vehicle referred to in paragraph (a) and may examine and open any package or container of any kind containing or believed to contain any article or product which may be transported, manufactured, sold, or exposed for sale in violation of the provisions of this chapter, the rules of the department, or the laws which the department enforces and may inspect the contents thereof and take therefrom samples for analysis.
(2) It shall be unlawful for the driver of any vehicle, other than one exempted in subparagraph 7. of paragraph (a) of subsection (1), to pass any official road guard inspection station without first stopping and submitting the vehicle for inspection. A violation of this subsection shall constitute a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
(3) Every law enforcement officer is authorized to assist employees of the department listed in subsection (1) in the enforcement of subsection (2). Such officer *1099 is authorized to stop and detain any vehicle and its driver who has failed to comply with subsection (2) until an employee of the department arrives to conduct the inspection required by law. Such law enforcement officer or a road guard inspection special officer may require the driver to return with his vehicle to the road guard inspection station where the driver failed to stop the vehicle for inspection.
(4) No civil or criminal liability shall be imposed upon any person who is authorized to enforce or assist in enforcement of the provisions of this section and who is lawfully engaged in such activity.[1]
In holding the statute unconstitutional, in Lake Butler Apparel Co.,[2] United States District Judge W. Terrell Hodges held that the state of Florida, through the Department of Agriculture's Road Guard Bureau was "conducting random stops and searches of motor vehicles ... for the purpose of enforcing the regulatory laws within its jurisdiction." 551 F. Supp. at 904. Analogizing the agricultural inspection stops to border searches for illegal aliens which are searches conducted within the criminal context, Hodges reasoned that once a legitimate stop occurs, the decision to inspect the vehicle further must be supported by probable cause based on "`reasonable standards' or `neutral criteria' for selecting or searching those few vehicles which are actually searched." 551 F. Supp. at 906.
We do not agree with Judge Hodges' interpretation of the statute or of the applicable case law. We find the statute to authorize searches based on an administrative plan containing specific neutral criteria. The statute is, therefore, constitutional, and the search of Roche's van pursuant to a valid administrative search warrant was also constitutional. The decision of the district court is approved.
The controversy over the statute arises from confusion about the meaning of "probable cause" in the context of administrative search warrants, a controversy well documented in federal case law.
In Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Supreme Court of the United States first acknowledged that the protections of the fourth amendment to the United States Constitution applied when a search of private property was conducted to enforce compliance with regulations designed to ameliorate social conditions and to protect the general welfare. Prior to Camara, fourth amendment protections had been invoked primarily in the context of criminal search and seizure, where society's immediate interest was in apprehending and punishing individual violations of criminal laws. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).
In Camara, the Court recognized that the warrant in an administrative or regulatory search provided the citizen with two primary reassurances: 1) It affirms that the search is authorized by proper authority; 2) It affirms that the search is being conducted for a proper purpose. 387 U.S. at 532-33, 87 S.Ct. at 1732-33. The Court also recognized that routine regulatory inspections were less hostile intrusions into privacy interests and that the probable cause required to justify such intrusion had to be tested for reasonableness. That test, the Court ruled, is "balancing the need to search against the invasion which the search entails." 387 U.S. at 537, 87 S.Ct. *1100 at 1735. The Court then went on to define the factors which justify area-wide authorization of a regulatory search:
First, such programs have a long history of judicial and public acceptance. Second, the public interest demands that all dangerous conditions be prevented or abated, yet it is doubtful that any other canvassing technique would achieve acceptable results... . Finally, because the inspections are neither personal in nature nor aimed at the discovery of evidence of crime, they involve a relatively limited invasion of the urban citizen's privacy.
Id. (citations omitted).
Having recognized that "the facts that would justify an inference of `probable cause' to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken," and that "[t]he test of `probable cause' required by the Fourth Amendment can take into account the nature of the search that is being sought," 387 U.S. at 538, 87 S.Ct. at 1735 (quoting Frank v. Maryland, 359 U.S. 360, 383, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959) (Douglas, J., dissenting)), the Court held, "it is obvious that `probable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." Id. Camara, then, stands for the proposition that when a regulatory or administrative scheme requires searches of private premises in order to effectuate its goal, a citizen may demand a warrant as proof that the search of his property is being carried out by an authorized person for authorized purposes. Camara makes explicit that the probable cause measured is probable cause to believe that property in that general area or class may be susceptible to harboring or fostering the harm the administrative or regulatory scheme seeks to ameliorate. There is no requirement that the warrant be issued only upon a finding that a particular property poses a specific, individual threat of violating the administrative or regulatory scheme.
In Marshall v. Barlow's Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Court held that an explicit statutory program, requiring inspection for enforcement, could not forgive the warrant requirement but went on to again emphasize the different nature of the probable cause required for warrants under that statutory program:
[E]ntitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required... . A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.
436 U.S. at 320-21, 98 S.Ct. at 1824-25 (citations and footnote omitted). The neutral criteria must spell out what class of properties is to be searched and what harm is sought to be prevented. The warrant issues upon a showing that the property to be searched is, in the judgment of a neutral magistrate, within that class. "A warrant ... would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." 436 U.S. at 323, 98 S.Ct. at 1826.
Turning, then, to the Florida statute, we hold that the statutory protective scheme contained in Chapters 573 through 581 sets forth with particularity the scope of inspection for particular diseased, defective or unlicensed products.[3] The searches authorized *1101 in section 570.15 are expressly limited to those necessary to implement the regulatory scheme and must be read in pari materia with the entire statutory plan. The statute itself, in section 1(a) sets forth those classes of property subject to regulation and search. Neutral criteria delineating the classes are contained in the language
which are used or are of a type which could be used in the production, manufacture, storage, sale, or transportation within the state of any food product; any agricultural, horticultural, or livestock product; or any article or product with respect to which any authority is conferred by law on the department.
In order to obtain a warrant, the inspecting officer is required to state under oath that the premises or vehicle to be searched is included in one of the classes of property delineated in subsection (1)(a), and the neutral magistrate must so find. The scope of the inspection is limited by subsection (1)(c) which incorporates by reference the regulatory plan enforced by the Department of Agriculture.
Judge Hodges was disturbed by the seeming randomness of searches of those vehicles which stopped. All vehicles falling into the statutory class are given notice that they are required to stop, subject to search, at agricultural inspection stations. There is nothing random in the definition of the class. The probable cause attaching to the class supports the individual searches. The lack of tax money and manpower to achieve total enforcement of a regulatory scheme must not be grounds for declaring the scheme itself facially unconstitutional.
In conclusion, we embrace the reasoning of the United States Circuit Court of Appeals for the Ninth Circuit, in United States v. Schafer, 461 F.2d 856 (9th Cir.), cert. denied, 409 U.S. 881, 93 S.Ct. 211, 34 L.Ed.2d 136 (1972), which upheld a conviction for possession of marijuana discovered in appellant's baggage during a warrantless search pursuant to an agricultural quarantine.
The effectiveness of an agricultural quarantine depends upon broad coverage of the inspections used to enforce it. Quarantine inspectors determine the need to inspect at a particular point on the likelihood that persons departing the quarantine area at that point will be carrying one or more of the plant substances on the quarantine list, not on any particular knowledge about particular individuals. Moreover, the decision to inspect is not "subject to the discretion of the official in the field." In view of the fact that a quarantine inspection is not a search "which has as its design the securing of information ... which may be used to effect a further deprivation of life, liberty or property," and the fact that "it is doubtful that any other canvassing technique would achieve acceptable results," we think that the general administrative determination of the necessity for these baggage searches at the Honolulu airport satisfies the "probable cause" requirements of Camara.

461 F.2d at 859 (citations omitted).
In the case of section 570.15, we find that the legislature has isolated specific threats to the health, safety and general welfare of the citizens of this state, has recognized a class of private property which must be subject to regulatory searches in order to prevent the specified harm, and has set forth sufficient neutral criteria to guide the officers charged with the duty to inspect in identifying members of the delineated classes. The citizen is protected by the requirement of a warrant issued upon a showing that the regulatory scheme encompasses his property. We therefore find section 570.15, Florida Statutes (1980) to be constitutional and approve the decision of the district court of appeal.
It is so ordered.
*1102 BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD and SHAW, JJ., concur.
NOTES
[1] We note that section 570.15(1)(b) was amended in 1983 to provide "Such inspection will be conducted in accordance with the administrative standards, including specific neutral criteria, for conducting such inspection set forth by appropriate rules of the department." The absence of this language prior to 1983 cannot be taken as acknowledgement of the absence of specific neutral criteria in the search in question.
[2] Of course, the decision in Lake Butler Apparel Co., is not binding on the courts of this state. State v. Dwyer, 332 So.2d 333 (Fla. 1976); Bradshaw v. State, 286 So.2d 4 (Fla. 1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 225 (1974).
[3] See e.g., Florida Statutes § 573.25 (celery, sweet corn); § 573.74 (foliage plants); § 573.825 (watermelons); § 573.854 (soybeans); § 573.880 (tobacco); § 573.906 (peanuts); § 576.051 (agricultural fertilizer); § 578.11 (seed); § 580.091 (feed and feedstuff). These chapters are further implemented in rules published in Title 5B of the Florida Administrative Code.