# TORRES *v.* PUERTO RICO

No. 77–1609.   Argued January 10, 1979—Decided June 18, 1979

BURGER, C. J., delivered the opinion of the Court, in which WHITE, POWELL, REHNQUIST, and STEVENS, JJ., joined. BRENNAN, J., filed an opinion concurring in the judgment, in which STEWART, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 474.

*Joseph Remcho* argued the cause for appellant. With him on the briefs were *Celedonia Medin Lozada Hernandez* and *Celedonia Medin Lozada Gentile.*

*Roberto Armstrong, Jr.,* Deputy Solicitor General of Puerto Rico, argued the cause for appellee. With him on the brief was *Hector A. Colon Cruz,* Solicitor General.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

I

In 1975, the Commonwealth of Puerto Rico enacted legislation authorizing its police to search the luggage of any person arriving in Puerto Rico from the United States. Pub. Law 22, P. R. Laws Ann., Tit. 25, § 1051 *et seq.* (Supp. 1977).[1] The "Statement of Motives" in the preamble to the statute indicates that it was enacted in response to a serious increase in the importation of firearms, explosives, and narcotics from

---

*Bruce J. Ennis* filed a brief for the American Civil Liberties Union as *amicus curiae* urging reversal.

[1] Public Law 22, § 1, P. R. Laws Ann., Tit. 25, § 1051 (Supp. 1977), provides:

"The Police of Puerto Rico is hereby empowered and authorized to inspect the luggage, packages, bundles, and bags of passengers and crew who land in the airports and piers of Puerto Rico arriving from the United States; to examine cargo brought into the country, and to detain, question, and search those persons whom the Police have ground to suspect of illegally carrying firearms, explosives, narcotics, depressants or stimulants or similar substances."

the mainland, and a concomitant rise in crime on the island. As construed by the Puerto Rico Supreme Court, Public Law 22 does not require the police to have probable cause to believe that they will find contraband before they search baggage. However, it does not appear that the luggage of all travelers arriving from the mainland is subject to this kind of search.

Appellant Terry Torres, a resident of Florida, arrived at San Juan's Isla Verde Airport aboard a nonstop commercial flight from Miami. An officer's suspicions were aroused when he observed that Torres seemed nervous, and kept looking at an armed, uniformed officer stationed nearby. There was, however, no articulable reason to suspect that Torres was carrying contraband. When Torres claimed his baggage, the officer stopped him, identified himself as an agent of the Criminal Investigation Bureau, and presented Torres with a card describing the provisions of Public Law 22. The uniformed officer approached at the same time; Torres was taken with his luggage to the Bureau's office at the airport.

Once there, the officer asked Torres if he understood what was written on the card. Torres said that he did, but he objected to having his luggage searched and asked to telephone his uncle, a Puerto Rico attorney. The officer refused to allow him to place the call, stating that he could contact a lawyer if it appeared that he had committed a crime. Torres then yielded to the search and unlocked his bags.

The search revealed one ounce of marihuana, a wooden pipe bearing marihuana residue, and approximately $250,000 in cash. Torres was charged, tried, and convicted of violating § 404 of the Controlled Substances Act of Puerto Rico, P. R. Laws Ann., Tit. 24, § 2404 (Supp. 1977). A sentence of from one to three years' imprisonment was imposed.

On appeal to the Supreme Court of Puerto Rico, Torres contended that the search pursuant to Public Law 22 violated the federal constitutional prohibition against unreasonable searches. Only seven of the eight justices of the Puerto Rico

Supreme Court participated in considering the appeal; four of the seven concluded that Public Law 22 violated the Fourth Amendment. Three justices held Public Law 22 constitutional. Article V, § 4, of the Puerto Rico Constitution provides that no law may be held unconstitutional except by a majority of all the members of the Supreme Court. Accordingly, there being only a minority of the justices so holding, the court entered a judgment stating:

> "The search of appellant's belongings being based on the provisions of Act No. 22 of August 6, 1975, *and considering the absence of the majority vote required by the Constitution to annul said Act,* the judgment appealed is affirmed." (Emphasis added.)

We noted probable jurisdiction. 439 U. S. 815 (1978).[2]

## II

Decisions of this Court early in the century limited the application of the Constitution in Puerto Rico. In *Downes* v. *Bidwell,* 182 U. S. 244 (1901), we held that Congress could establish a special tariff on goods imported from Puerto Rico to the United States, and that the requirement that all taxes and duties imposed by Congress be uniform throughout the

---

[2] Torres made an untimely motion for reconsideration in the Puerto Rico Supreme Court, asserting that the application of Art. V, § 4, to his appeal violated federal constitutional guarantees of due process. Presumably because of the untimeliness, the court denied the motion without opinion.

Torres seeks to renew this contention here. Since the judgment of conviction must be reversed because of the invalidity of the search, see *infra,* at 471–474, we need not address the issue.

The Commonwealth suggests that its Supreme Court should be allowed to address this issue because if it were to invalidate the special majority-vote requirement, it would then reverse appellant's conviction in accordance with the views of the majority of the justices who participated. We see no purpose in requiring the Puerto Rico Supreme Court to address a second federal constitutional issue which could not affect our holding.

United States, Art. I, § 8, cl. 1, was not applicable to the island. Mr. Justice Edward White's concurring opinion announced the doctrine that the United States could acquire territory without incorporating it into the Nation, and that unincorporated territory was not subject to all the provisions of the Constitution. 182 U. S., at 287–344. In support of this doctrine, the concurring opinion emphasized that full application of the Constitution to all territory under the control of the United States would create such severe practical difficulties under certain circumstances as to prohibit the United States from exercising its constitutional power to occupy and acquire new lands. *Id.,* at 305–311.

The distinction between incorporated and unincorporated territories was first adopted by a majority of the Court in *Dorr* v. *United States,* 195 U. S. 138 (1904); the Court sustained the refusal of the territorial government of the Philippines to seek indictments by grand jury or afford petit juries in criminal cases. The Court emphasized that imposition of the jury system on people unaccustomed to common-law traditions "may be to work injustice and provoke disturbance rather than to aid the orderly administration of justice." *Id.,* at 145–146, 148. It also suggested that the constitutional guarantees as to juries should not be construed so as to hamper Congress in exercising its constitutional authority to govern the territories. *Id.,* at 148. The doctrine that the Constitution does not guarantee grand and petit juries in unincorporated territories was applied to Puerto Rico, notwithstanding that its residents theretofore had been granted United States citizenship, in *Balzac* v. *Porto Rico,* 258 U. S. 298 (1922).

On the other hand, this Court has held or otherwise indicated that Puerto Rico is subject to the First Amendment Speech Clause, *id.,* at 314; the Due Process Clause of either the Fifth or the Fourteenth Amendment, *Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U. S. 663, 668–669, n. 5 (1974); and the equal protection guarantee of either the Fifth or the

Fourteenth Amendment, *Examining Board* v. *Flores de Otero,* 426 U. S. 572, 599–601 (1976). In *Califano* v. *Torres,* 435 U. S. 1, 4 n. 6 (1978) *(per curiam),* we assumed without deciding that the constitutional right to travel extends to the Commonwealth.

Congress may make constitutional provisions applicable to territories in which they would not otherwise be controlling. *Mullaney* v. *Anderson,* 342 U. S. 415, 419–420 (1952). Congress generally has left to this Court the question of what constitutional guarantees apply to Puerto Rico. *Examining Board* v. *Flores de Otero, supra,* at 590. However, because the limitation on the application of the Constitution in unincorporated territories is based in part on the need to preserve Congress' ability to govern such possessions, and may be overruled by Congress, a legislative determination that a constitutional provision practically and beneficially may be implemented in a territory is entitled to great weight.

Both Congress' implicit determinations in this respect and long experience establish that the Fourth Amendment's restrictions on searches and seizures may be applied to Puerto Rico without danger to national interests or risk of unfairness. From 1917 until 1952, Congress by statute afforded equivalent personal rights to the residents of Puerto Rico. Act of Mar. 2, 1917, § 2, cl. 13–14, 39 Stat. 952, *repealed,* Act of July 3, 1950, § 5 (1), 64 Stat. 320 (effective July 25, 1952). When Congress authorized the people of Puerto Rico to adopt a constitution, its only express substantive requirements were that the document should provide for a republican form of government and "include a bill of rights." Act of July 3, 1950, § 2, 64 Stat. 319, 48 U. S. C. § 731c. A constitution containing the language of the Fourth Amendment, as well as additional language reflecting this Court's exegesis thereof, P. R. Const., Art. II, § 10, was adopted by the people of Puerto Rico and approved by Congress. See Act of July 3, 1952, 66 Stat. 327. That constitutional provision remains in effect.

We conclude that the constitutional requirements of the Fourth Amendment apply to the Commonwealth.[3]   As in *Examining Board* v. *Flores de Otero, supra,* at 601, we have no occasion to determine whether the Fourth Amendment applies to Puerto Rico directly or by operation of the Fourteenth Amendment.

### III

The search of appellant's baggage pursuant to Public Law 22 did not satisfy the requirements of the Fourth Amendment as we heretofore have construed it.   First, the grounds for a search must satisfy objective standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests.   *Delaware* v. *Prouse,* 440 U. S. 648, 653–655 (1979).   The governmental interests to be served in the detection or prevention of crime are subject to traditional standards of probable cause to believe that incriminating evidence will be found.   Yet Public Law 22 does not require, and the officers who made the search challenged here did not have, probable cause for such belief.

Second, a warrant is normally a prerequisite to a search unless exigent circumstances make compliance with this requirement impossible.   *Mincey* v. *Arizona,* 437 U. S. 385, 393–394 (1978).   Yet, Public Law 22 requires no warrant, and none was obtained before appellant's bags were searched.[4]

---

[3] The Commonwealth has not denied that it is subject to the constitutional prohibition against unreasonable searches.   However, even an explicit concession on this point would not " 'relieve this Court of the performance of the judicial function' " of deciding the issue.   *Sibron* v. *New York,* 392 U. S. 40, 58 (1968), quoting *Young* v. *United States,* 315 U. S. 257, 258 (1942).

[4] Recently, we made clear that once a locked trunk was seized and impounded incident to an arrest there was no exigency justifying forcibly opening the locked trunk without a search warrant.   *United States* v. *Chadwick,* 433 U. S. 1, 15 (1977).   There was no suggestion in *Chadwick* and there is no suggestion here that the officers had grounds to believe that appellant's bags contained an "immediately dangerous instrumentality."   See *id.,* at 15 n. 9.

## IV

Apparently recognizing that the search of appellant's luggage pursuant to Public Law 22 cannot be sustained under our previous decisions, Puerto Rico urges us not to be bound in "the conceptual prison of *stare decisis*." It suggests a novel exception to the normal Fourth Amendment requirements of a warrant and probable cause, referring us to decisions of this and other courts which have sustained (a) searches by the Border Patrol at a "functional equivalent" of the international border of the United States, (b) state inspections of shipments of goods in furtherance of health and safety regulations, (c) the use of airport metal detectors, and (d) certain searches on military bases. The Commonwealth asserts that these decisions recognize a variety of "intermediate borders," analogous to the international border of the United States, at which searches are permitted even though normal Fourth Amendment requirements are not satisfied.

Puerto Rico then asks us to recognize an "intermediate border" between the Commonwealth and the rest of the United States. In support of this proposal it points to its unique political status, and to the fact that its borders as an island are in fact international borders with respect to all countries except the United States. Finally, Puerto Rico urges that because of the seriousness of the problems created by an influx of weapons and narcotics, it should have the same freedom to search persons crossing its "intermediate border" as does the United States with respect to incoming international travelers.

The decisions on which Puerto Rico seeks to erect its theory of "intermediate boundaries" do not reflect any geographical element of Fourth Amendment doctrine, however, but are based on a variety of considerations which have no bearing on this case. Public Law 22 cannot be justified by any analogy to customs searches at a functional equivalent of the international border of the United States. The authority of the

United States to search the baggage of arriving international travelers is based on its inherent sovereign authority to protect its territorial integrity. By reason of that authority, it is entitled to require that whoever seeks entry must establish the right to enter and to bring into the country whatever he may carry. *United States* v. *Ramsey,* 431 U. S. 606, 620 (1977); *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 272 (1973); *Carroll* v. *United States,* 267 U. S. 132, 154 (1925). Puerto Rico has no sovereign authority to prohibit entry into its territory; as with all international ports of entry, border and customs control for Puerto Rico is conducted by federal officers. Congress has provided by statute that Puerto Rico must accord to all citizens of the United States the privileges and immunities of its own residents. Act of Aug. 5, 1947, § 7, 61 Stat. 772, 48 U. S. C. § 737. See *Mullaney* v. *Anderson,* 342 U. S., at 419 n. 2.

Public Law 22 also may not be sustained by analogy to state inspection provisions designed to implement health and safety legislation. By a vote of four to three the Puerto Rico Supreme Court rejected appellee's attempt to characterize Public Law 22 as a health and safety measure, finding instead that it was enacted for the purpose of enforcing criminal laws. In any event, health and safety inspections are subject to the Fourth Amendment warrant requirement unless they fall within one of its recognized exceptions, and must be based on a "plan containing specific neutral criteria." *Marshall* v. *Barlow's, Inc.,* 436 U. S. 307, 312, 323 (1978).[5]

Puerto Rico's position boils down to a contention that its law enforcement problems are so pressing that it should be granted an exemption from the usual requirements of the Fourth Amendment. Although we have recognized exceptions

---

[5] Use of airport metal detectors with respect to passengers boarding aircraft and searches of persons entering military bases involve considerations not relevant to this case.

to the warrant requirement when specific circumstances render compliance impracticable, we have not dispensed with the fundamental Fourth Amendment prohibition against unreasonable searches and seizures simply because of a generalized urgency of law enforcement. *Almeida-Sanchez* v. *United States, supra,* at 273–275; *United States* v. *Di Re,* 332 U. S. 581, 595 (1948).

In any event, Puerto Rico's law enforcement needs are indistinguishable from those of many states. Puerto Rico is not unique because it is an island; like Puerto Rico, neither Alaska nor Hawaii are contiguous to the continental body of the United States. Moreover, the majority of all the states have borders which coincide in part with the international frontier of the United States; virtually all have international airport facilities subject to federal customs controls.

We therefore hold that the search pursuant to Public Law 22 violated constitutional guarantees; accordingly, evidence obtained in the search of appellant's luggage should have been suppressed. The judgment of the Supreme Court of Puerto Rico is therefore reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEWART, MR. JUSTICE MARSHALL, and MR. JUSTICE BLACKMUN join, concurring in the judgment.

Appellant's conviction of violating the Puerto Rico Controlled Substances Act was based on evidence discovered when police, admittedly without probable cause, searched appellant's luggage after he arrived in Puerto Rico from Florida. The Supreme Court of Puerto Rico has construed Public Law 22 to authorize such searches without probable cause.*

---

*Four of the eight members of the Supreme Court of Puerto Rico were of the opinion that Public Law 22 as so construed violated the Fourth

I concur in the Court's holding that the Fourth Amendment applies in full force to Puerto Rico, that the search of appellant's luggage without a warrant based on probable cause violated the Fourth Amendment, that Public Law 22 is unconstitutional insofar as it purports to authorize what the Fourth Amendment prohibits, and that the evidence discovered in the unconstitutional search therefore must be suppressed.

Appellee concedes that the Fourth Amendment applies to the Commonwealth of Puerto Rico, Brief for Appellee 12, citing *Examining Board* v. *Flores de Otero,* 426 U. S. 572, 599 (1976); *Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U. S. 663, 668 n. 5 (1974). Whatever the validity of the old cases such as *Downes* v. *Bidwell,* 182 U. S. 244 (1901), *Dorr* v. *United States,* 195 U. S. 138 (1904), and *Balzac* v. *Porto Rico,* 258 U. S. 298 (1922), in the particular historical context in which they were decided, those cases are clearly not authority for questioning the application of the Fourth Amendment—or any other provision of the Bill of Rights—to the Common-

Amendment of the Federal Constitution. See *ante,* at 468. But Art. V, § 4, of the Puerto Rico Constitution provides that no law shall be held unconstitutional by the Supreme Court of Puerto Rico except by a majority of the total number of justices of which the court is composed. Appellant argues that this requirement violates the Supremacy Clause and the Due Process Clause of the Federal Constitution. In light of our resolution of the merits of appellant's search-and-seizure claim, we need not pass on these contentions. Cf. *Ohio ex rel. Bryant* v. *Akron Park Dist.,* 281 U. S. 74 (1930).

The Commonwealth's discussion of the impact of Art. V, § 4, on this case, however, implicitly suggests a claim that this "super-majority" provision constitutes an adequate and independent nonfederal ground supporting the judgment reached by the Puerto Rico Supreme Court. This cannot be. The provision neither supplies an independent substantive basis for the decision, nor controls the parties' conduct of the litigation. It affects only the internal "working rules" of the court. While such rules might affect the decision of cases, they cannot be adequate grounds in support of those decisions.

wealth of Puerto Rico in the 1970's. As Mr. Justice Black declared in *Reid* v. *Covert,* 354 U. S. 1, 14 (1957) (plurality opinion): "[N]either the cases nor their reasoning should be given any further expansion. The concept that the Bill of Rights and other constitutional protections against arbitrary government are inoperative when they become inconvenient or when expediency dictates otherwise is a very dangerous doctrine and if allowed to flourish would destroy the benefit of a written Constitution and undermine the basis of our Government."