UNITED STATES of America, Plaintiff,

v.

Ramon RODRIGUEZ ROSARIO, a/k/a Samuel Colon, Defendant.

Crim. No. 86–314 (JAF).

United States District Court,
D. Puerto Rico.

Aug. 7, 1986.

Luis A. Plaza, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Gustavo Adolfo del Toro, San Juan, P.R., for defendant.

## ORDER

FUSTÉ, District Judge.

On May 31, 1986 defendant attempted to board TWA flight # 17 at the International Airport in San Juan, Puerto Rico. This flight was scheduled to New York. At the pre-flight inspection area, the defendant was questioned by Immigration Inspector José Rodriguez as to his citizenship. Defendant answered that he was a United States citizen. After several questions, the immigration inspector realized that defendant, through his answers, was not a citizen of the United States and that probable cause existed to believe that defendant was an illegal alien trying to reach the continental United States. Defendant was advised of the existence of the above-mentioned probable cause situation and became violent. Several law enforcement officers were needed to calm him down and to arrest him. After being properly advised of his constitutional rights, defendant admitted his Dominican Republic citizenship.

He was arrested and now faces an indictment for violations to 8 U.S.C. Sec. 1325(1), 18 U.S.C. Secs. 111 and 1114, and 18 U.S.C. Sec. 911.

■ It is clear that the government's sovereign authority to protect its territorial integrity justifies a warrantless arrest and search of illegal aliens, *United States v. Montoya de Hernández,* —— U.S. ——, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381 (1985). The routine exercise of employees of the Immigration Service to interrogate aliens "or persons believed to be an alien as to his right to be or to remain in the United States" is a broad Congressional grant in recognition of the sovereign authority to control its borders. This power, as typified in 8 U.S.C. Sec. 1357(b), has been held constitutionally valid. *See Almeida-Sánchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *United States v. Alvarado,* 321 F.2d 336 (2nd Cir.), *cert. denied* 375 U.S. 987, 84 S.Ct. 522, 11 L.Ed.2d 474 (1963); *United States v. Fuentes,* 379 F.Supp. 1145 (S.D.Tex.1974).

■ This authority is to be exercised only by the officers of the Immigration Service, and is to be executed *in the United States.* 8 U.S.C. Sec. 1357(a)(2). Puerto Rico is included in the term "United States" under the federal immigration laws. *See* 8 U.S.C. Sec. 1101(38). *Torres v. Commonwealth of Puerto Rico,* 442 U.S. 465, 471, 99 S.Ct. 2425, 2429, 61 L.Ed.2d 1 (1979). The powers of an immigration officer clearly include the right to effectuate the "arrest [of] any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation [of Immigration]." *See* 8 U.S.C. Sec. 1357(a)(2), and Sec. 1182(a)(20);[1] *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Mendoza v. I.N.S.,* 559 F.Supp. 842, 847 (D.C.Tex. 1982). The standard required for such detention is a mere reasonable suspicion that the person seized was an alien unlawfully in the country. *Illinois Migrant Council v. Pilliod,* 531 F.Supp. 1011 (D.C.Ill.1982).

■ Defendant's request for suppression is based on the allegation that the Muñoz Marín International Airport in Puerto Rico is not a border within the meaning of 8 U.S.C. Sec. 1357. Said request is without merit. Puerto Rico's borders are subject to federal customs control, and said control preempts any local regulation of them. *See Torres v. Commonwealth of Puerto Rico,* 442 U.S. at 475, 99 S.Ct. at 2431. Furthermore, the federal immigration and naturalization regulations establish that Puerto Rico will be subject to the controls of a "departure-control officer". *See* 8 C.F.R. Sec. 315.1(e)(i). Said regulation states that Puerto Rico would be deemed a frontier between the mainland (8 C.F.R. Sec. 215.1(h), the term "depart from the United States means depart by land, water or air: ... (2) from one geographical part of the U.S. for a separate geographical part of the United States)". Also, this court has recently concluded that Puerto Rico is a secondary border of the United States. *See López v. Immigration Services,* Docket No. 83–2388 (JP), July 11, 1986.

■ The immigration officer's intervention with defendant was not illegal. The law requires that he question persons departing about their citizenship. The motion to suppress the statements made by defendant during the exchange with the immigration officer is hereby DENIED. Defendant's claim is legal, not factual; there-

---

1. Section 1182(d)(7) reads as follows:
    The provisions of subsection (a) of this section, except paragraphs (20), (21), and (26) of said subsection, shall be applicable to any alien who shall leave Guam, Puerto Rico, or the Virgin Islands of the United States, and who seeks to enter the continental United States. The Attorney General shall by regula-

    tions provide a method and procedure for the temporary admission to the United States of the aliens described in this proviso. Any alien described in this paragraph, who is excluded from admission to the United States, shall be immediately deported in the manner provided by section 1227(a) of this title.

fore, we do not afford him a hearing on the motion to suppress. Fed.R.Crim.P. 12(e). *See* J. Cissell, *Federal Criminal Trials* at 85 (1983). The motion to dismiss indictment is also DENIED. Defendant's allegation to the effect that this situation is typical of Puerto Rico and, thus, discriminatory, has no merit. The United States Government has a legitimate right to use all legal means to curb the illegal traffic of aliens who use Puerto Rico as a prot of entry, not only to Puerto Rico, but also as access to the mainland. Of course, this court's decisions on the subject should not be taken to mean that the United States is discriminating against United States citizens using Puerto Rico airports. We know of no law that would require a United States citizen or anybody else to do more than simply identify himself if questioned. The inconvenience caused to those who are "legal" is minimal compared to the benefits of the procedure followed. Judge Pieras' recent decision in *López v. Immigration Services* does not require of the citizen more than what we are resolving here. Recent claims by third parties to the effect that passports will be needed for United States citizens to travel from Puerto Rico to the mainland remind us of false prophets. Better stated, prophets of doom.

IT IS SO ORDERED.