**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose VALDES, Lino Lopez,**
**Defendants–Appellants.**

No. 87–6088.

United States Court of Appeals,
Eleventh Circuit.

July 13, 1989.

John H. Lipinski, Miami, Fla., for Jose Valdes.

Harris Sperber, Robert Kalter, Miami, Fla., for Lino Lopez.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Eileen O'Connor, U.S. Atty's. Office, Ft. Lauderdale, Fla., Allan J. Sullivan, Lynne W. Lamprecht, Linda C. Hertz, Asst. U.S. Attys., Miami, Fla., for U.S.

Before TJOFLAT and EDMONDSON, Circuit Judges, and GIBSON *, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Section 881(a)(4) of title 21 of the United States Code provides that an automobile which is used to facilitate a narcotics transaction is subject to forfeiture to the United States.[1] Section 881(b)(4)[2] provides, in turn, that if "the Attorney General has probable cause to believe that [an automo-

bile] is subject to ... civil forfeiture" under section 881(a), he may seize the automobile without a warrant, take it into custody, and initiate forfeiture proceedings.[3] In this case, the Attorney General, having probable cause to believe that automobiles owned by appellants Lino Lopez and Jose Valdes had been used to facilitate the possession or sale of cocaine, seized them pursuant to section 881(b)(4). The automobiles were thereafter searched, and the evidence thereby obtained led to appellants' convictions for cocaine trafficking.

At trial, appellants objected to the presentation of such evidence to the jury on alternate grounds: first, that section 881(b)(4), if properly interpreted, precluded the seizure of their automobiles without a warrant; second, that even if authorized under section 881(b), the seizures were barred by the fourth amendment to the Constitution because they were performed without a warrant. In this appeal, appellants ask us to uphold their objection, to set aside their convictions, and to grant them a

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Section 881(a) provides in pertinent part as follows:

   **(a) Subject Property**
   The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.
   . . . .
   (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1). . . .
   21 U.S.C. § 881(a) (1982 & Supp. IV 1986).
   In addition, section 881(h) provides that:
   All right, title, and interest in property [subject to forfeiture under section 881(a)] shall vest in the United States upon commission of the act giving rise to forfeiture under this section.
   21 U.S.C. § 881(h) (Supp. IV 1986).

2. Section 881(b) provides in pertinent part as follows:

   **(b) Seizure pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims; issuance of warrant authorizing seizure**
   Any property subject to civil forfeiture to the United States under [21 U.S.C. § 881(a)] may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—
   . . . .
   (4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under [21 U.S.C. § 881(a) ].
   21 U.S.C. § 881(b) (1982 & Supp. IV 1986).

3. Once the Attorney General seizes property subject to forfeiture under section 881(a), he must institute forfeiture "proceedings under [21 U.S.C. § 881(d) ] promptly." 21 U.S.C. § 881(b) (1982 & Supp. IV 1986). Section 881(d) states that "[t]he provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the custom laws ... insofar as applicable and not inconsistent with the provisions [of 21 U.S.C. § 881]" govern the forfeiture proceedings. 21 U.S.C. § 881(d) (1982 & Supp. IV 1986); see also 19 U.S.C. §§ 1607–1609 (1982 & Supp. IV 1986) (custom laws).

new trial. We decline to do so, and accordingly affirm.[4]

## I.

Appellants were charged with conspiracy to possess cocaine with intent to distribute, and possession and distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982), and were tried together. The Government's proof established the following. On March 16, 1987, in Fort Lauderdale, Florida, Special Agent Harry Sommers of the United States Drug Enforcement Administration (DEA) was introduced to Ted Bronson by a confidential informant who told Sommers that Bronson could supply him with cocaine. Bronson subsequently agreed to sell Sommers a kilogram of cocaine for $24,000. The sale was to take place in the parking lot of the Central Shopping Plaza in Miami on March 18.

Sommers met Bronson at the shopping center on the 18th, at which time Bronson told him that someone else would supply the cocaine. Bronson then went to a public telephone and made a call. After completing the call, he walked to an Oldsmobile Toronado parked nearby, entered the car, and had a discussion with appellant Lopez who was seated in the car.[5] Bronson returned a few minutes later and told Sommers that the deal could not go through until his supplier saw the money. Sommers refused to display his money, and the sale did not take place. He and Bronson agreed, though, that they would try to conclude the deal at a later date.

On April 1, 1987, Bronson called Sommers, and they reached an agreement: Sommers would meet Bronson at a Broward County motel the next day, show him the money, and then drive with Bronson to the residence of the supplier in Miami. The next morning, the two men met at the motel as planned. After showing Bronson the money, Sommers and Bronson proceeded to Miami. On the way there, they stopped at a public telephone where Bronson made a call; when Bronson completed the call, he told Sommers that he had spoken to his supplier and that the cocaine would be available at 1:00 p.m. As they approached Miami, they stopped at a service station where Bronson made another call, and received one in return a few moments later. He then reported to Sommers that the cocaine his supplier had set aside for Sommers appeared to be of an inferior quality, so his supplier was arranging for another kilogram to be delivered. An hour later, from another location, Bronson called his supplier once again. After the call, he told Sommers that his supplier had a new supply of cocaine, although it would be eighty grams short. They then proceeded to the residence of Lopez.

Meanwhile, Lopez arrived at his Miami residence in the Oldsmobile Toronado[6] and parked in his garage. Approximately forty minutes later, appellant Jose Valdes arrived at Lopez' residence driving a Cadillac which he parked at the curb in front of the residence. Valdes entered Lopez' residence; a few moments later, he came out, retrieved a brown paper bag from the Cadillac, and reentered the house. A few minutes later, Bronson and Sommers arrived and parked across the street. Bronson pointed out the Cadillac to Sommers, and stated that it belonged to the person who was supplying Lopez cocaine. Bronson then entered Lopez' residence and returned with a brown paper bag containing 903.5 grams of cocaine, which he gave to Sommers.

---

4. The appellants present several other claims on this appeal. Appellant Lino Lopez claims that the district court precluded him from receiving his sixth amendment right to effective assistance of counsel by denying his motion for a continuance, and erred in permitting irrelevant prejudicial testimony to come before the jury. Appellant Jose Valdes claims that the district court erred in failing to give a proper limiting instruction regarding the admission of certain evidence. These claims are meritless and warrant no discussion.

5. A Fort Lauderdale Police Officer on surveillance at the scene identified appellant Lopez as an occupant of the vehicle.

6. The Government established at trial that this was the same Oldsmobile Toronado Bronson had entered in the Central Shopping Plaza parking lot on March 18.

With the cocaine in hand, Sommers signaled the DEA surveillance agents who had been following him to close in. The agents arrested appellant Lopez at the front door of his residence and appellant Valdes in the backyard. At the same time, the agents seized the Oldsmobile Toronado and the Cadillac, believing that the automobiles had been used to facilitate a drug transaction.

A post-seizure inventory search of the Oldsmobile Toronado revealed a mobile telephone bearing the same number as the telephone number listed in Bronson's address book under Lopez' name. A similar search of the Cadillac revealed a digital beeper as well as 27.8 grams of cocaine wrapped in brown paper. Telephone company toll records for the mobile telephone indicated that appellant Lopez had called the service station where Bronson and Sommers had stopped earlier in the afternoon and, moments later, had called the number of the digital beeper found in the Cadillac. At trial, the prosecutor relied on this evidence in urging the jury to find that appellants had been working together to traffick cocaine as alleged in the indictment.

## II.

As noted, 21 U.S.C. § 881(b)(4) authorizes the Attorney General to seize property without a warrant, and to take it into custody, if he "has probable cause to believe that the property is subject to ... forfeiture" under 21 U.S.C. § 881(a). In this case, appellants do not dispute that the DEA agents who seized their automobiles (1) had probable cause to believe that the automobiles had been used to facilitate a cocaine transaction, and thus were subject to forfeiture, (2) had the authority, under the plain language of section 881(b)(4), to

seize the vehicles and to take them into custody, and (3) conducted proper inventory searches. Appellants in effect concede that we must affirm their convictions unless we conclude either that as a matter of statutory interpretation, section 881(b)(4) contains a warrant requirement which the agents failed to meet, or that the seizures, and thus the subsequent inventory searches, violated the fourth amendment.[7]

Appellants' first argument is that we should read into section 881(b)(4) two requirements in addition to the one stated in the section—that "the Attorney General ha[ve] probable cause to believe that the property is subject to ... forfeiture." These two requirements are that (1) the Attorney General obtain a warrant before seizing the property unless exigent circumstances prevent him from doing so, and (2) that the property be seized immediately following the occurrence of the illegal act that renders the property forfeitable. In this case, exigent circumstances were not present; thus, if we accept appellants' position, the evidence obtained from the inventory searches of their automobiles should have been suppressed. Second, and alternatively, if we conclude that the principles of statutory construction preclude the reading of section 881(b)(4) appellants propose, appellants argue that the seizures, having been effected without a warrant, violated the fourth amendment.

■ We reject appellants' first argument because section 881(b)(4) is unambiguous; in plain language, it gives the Attorney General the authority to seize property without a warrant if he has probable cause to believe that it is forfeitable. Appellants cite no principle of statutory construction that would permit us to interpret the section to include the two requirements they suggest.[8] We therefore apply the statute

---

**7.** Appellants correctly point out that the seizures of their automobiles cannot be sustained under any of the exceptions to the fourth amendment warrant requirement. For example, exigent circumstances did not make it impracticable for the agents to obtain a warrant; nor were the seizures made incident to appellants' arrests. Finally, the agents' conduct cannot be excused on the ground that, in perfecting the seizures, they relied in good faith on the constitutional

validity of section 881(b)(4), *see Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), because they did not assert the good faith defense in response to appellants' motion to suppress.

**8.** Appellants urge us to follow a decision of the First Circuit, *United States v. Pappas,* 613 F.2d 324 (1st Cir.1979), in which a divided panel of that court read in these requirements to section

as written,[9] and turn to appellants' second argument, that the agents' conduct violated the fourth amendment.

The fourth amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV. Appellants contend that the seizures in this case were unreasonable, and thus violated the amendment, because they were made without a warrant, and no exigent circumstances which made the acquisition of a warrant impracticable existed. Hence, the district court should have invoked the exclusionary rule and suppressed the challenged evidence. *See, e.g., Torres v. Puerto Rico,* 442 U.S. 465, 471, 99 S.Ct. 2425, 2430, 61 L.Ed.2d 1 (1979).

■ The agents seized Valdes' Cadillac on the street, in front of Lopez' house; they seized Lopez' Oldsmobile Toronado in his garage. Neither appellant contends that the agents seized his automobile from a place where he had a legitimate expectation of privacy;[10] in other words, we assume the agents had a right to be where they were when they took the cars.

We are aware of no Supreme Court precedent that would require us to hold that, on these facts, the agents needed a warrant to seize appellants' automobiles.[11] We do have precedent, however, dealing with an analogous situation, the warrantless seizure of a person suspected of committing a crime, which we believe is instructive.

In *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), postal inspectors, exercising their statutory

---

881(b)(4). That court focused on the interplay of section 881(b) and subsection 881(b)(4). Section 881(b) states that property subject to civil forfeiture under section 881(a) "may be seized by the Attorney General upon process issued [by a United States district court] pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims." 21 U.S.C. § 881(b) (1982 & Supp. IV 1986). It then provides four exceptions to the need for such process, including where "the Attorney General has probable cause to believe that the property is subject to civil forfeiture under [21 U.S.C. § 881(a)]." 21 U.S.C. § 881(b)(4).

The panel majority in *Pappas* assumed that in order to obtain process from a district court pursuant to the Admiralty Rules, the Attorney General must allege that probable cause exists to believe that the property to be seized is subject to forfeiture. The majority then observed that if subsection (b)(4) is taken literally, the Attorney General, once he has probable cause, can altogether bypass the district court and simply seize the property. In short, a literal application of subsection(b)(4) would render the Admiralty Rules procedure superfluous. To avoid such a result, the *Pappas* panel read the exigent circumstances and contemporaneity requirements (which appellants now propose) into subsection (4). *Pappas,* 613 F.2d at 328.

What the *Pappas* majority failed to take into account, however, was that section 881(b) has alternative forfeiture procedures. While section 881(b) authorizes the Attorney General to invoke the forfeiture procedure provided by the Admiralty Rules, subsection (b)(4) also permits him to use the forfeiture procedure provided by the custom laws. *See* 21 U.S.C. § 881(d) (incorporating custom laws); *see also supra* n. 3. Thus, subsection (b)(4) cannot render the Admiralty Rules procedure superfluous. The forfeiture of real property, for example, could not be effected under the custom laws, since those laws do not apply to real property. *See* 19 U.S.C. §§ 1607–1610 (1982 & Supp. V 1987). In such a case, the Admiralty Rules procedure would have to be used.

9. In applying section 881(b)(4) as written, we join the Third Circuit. *See United States v. Bush,* 647 F.2d 357, 368–69 (3d Cir.1981). The Ninth Circuit, in *United States v. Spetz,* 721 F.2d 1457 (9th Cir.1983), acknowledges that section 881(b)(4) authorizes warrantless searches without limitation, but holds that this violates the fourth amendment unless one of the exceptions to the amendment's warrant requirement are present. *Id.* at 1469–70. *Cf. United States v. Pappas,* 613 F.2d 324 (1st Cir.1979).

10. Typically, a person would have a legitimate expectation of privacy in his garage and evidence seized in a warrantless search of it would be suppressed. *See United States v. Swart,* 679 F.2d 698, 700–01 (7th Cir.1982); *United States v. Hufford,* 539 F.2d 32, 34 (9th Cir.1976). Lopez, however, did not raise this objection and therefore waived it.

11. The Ninth Circuit, as we have noted, *see supra* note 9, would hold that a warrant is required in the circumstances present here.

authority to make a warrantless arrest of a person they had reasonable grounds to believe had committed a felony, arrested a man, Watson, they suspected of possessing stolen mail. Following the arrest, Watson consented to a search of his automobile. The search revealed the stolen mail, and led to Watson's conviction. *Id.* at 413, 96 S.Ct. at 822–23.

Before the Supreme Court, Watson contended that the trial judge should have precluded the prosecutor from using the stolen mail as part of the government's proof because the mail constituted the fruit of an illegal arrest. According to Watson, his arrest was illegal because it was effected without a warrant, which could easily have been obtained. The Court rejected Watson's argument, noting that "there is nothing in [our] prior cases indicating that under the Fourth Amendment a warrant is required to make a valid arrest for a felony." *Id.* at 416–17, 96 S.Ct. at 824.

The Court upheld Watson's arrest by balancing the interest of the individual citizen in maintaining his liberty against the public's need to control crime. The Court then concluded that if it gave "maximum protection [to] individual rights ... by requiring a magistrate's review of the factual justification prior to any arrest," it would create " 'an intolerable handicap for legitimate law enforcement.' " *Id.* at 417–18, 96 S.Ct. at 825 (quoting *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975)).

Requiring the police to have a warrant was, in the Court's view, a cost too great for society to bear given the manifold safeguards the law has fashioned to protect our citizens from illegal arrest. First, the police must have probable cause to believe that the arrestee has committed a crime before taking him into custody. Their reason for seizing him must then withstand prompt judicial scrutiny; if it fails to pass muster, the arrestee will be released. The consequences that may result if the arrest is declared illegal reduce the risk that the police will err. If they err, they may have to pay the arrestee money damages under one or more of a variety of common law theories, such as false arrest or false imprisonment, or statutes that remedy the infringement of constitutional rights, such as 42 U.S.C. § 1983 (1982); in addition, they may suffer discipline at the hands of their employer. Finally, even if the arrestee is subsequently indicted and brought to trial for committing the crime the police thought he had committed, the evidence obtained as a result of the arrest might be suppressed, as the "fruit of a poisonous tree," if they lacked probable cause when they took the arrestee into custody. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).

■ A seizure of property under section 881(b)(4) is essentially the same as the arrest of a person. In both cases, the object seized is believed to have committed a crime. *See United States v. United States Coin and Currency,* 401 U.S. 715, 719–20, 91 S.Ct. 1041, 1044, 28 L.Ed.2d 434 (1971) (Forfeit property has traditionally been viewed as being guilty of wrongdoing.). In both cases, the police must possess articulable facts to support such belief before they can take the object into custody. Moreover, if the owner of property seized under section 881(b)(4) believes that his property was seized without probable cause, the law provides him remedies essentially the same as those provided arrestees. The owner can challenge the seizure before a neutral magistrate; if the magistrate decides in his favor, the property will be released. If the officers responsible for seizing the property erred, they may be held accountable in much the same fashion as officers who make an illegal arrest. They may have to respond to the property owner in money damages, and they may be disciplined. Lastly, the "fruit of the poisonous tree" doctrine may render inadmissable evidence obtained as a result of the unlawful seizure. *See Segura v. United States,* 468 U.S. 796, 804–08, 104 S.Ct. 3380, 3385–87, 82 L.Ed.2d 599 (1984).

■ If federal law enforcement agents, armed with probable cause, can arrest a drug trafficker without repairing to the magistrate for a warrant, we see no

reason why they should not also be permitted to seize the vehicle the trafficker has been using to transport his drugs.[12] Appellants would have us accord the trafficker's property interest [13] greater deference than his liberty interest; they seem to suggest that the injury caused by erroneous detention (i.e. the period of time between seizure, or arrest, and the magistrate's ruling ending the detention) is somehow greater in the case of one's property than it is in the case of one's liberty. We are not persuaded. We therefore hold that the warrantless seizures of appellants' automobiles, and the subsequent inventory searches, were not unreasonable under the fourth amendment.[14]

Appellants' convictions are, accordingly,

AFFIRMED.

12. The Supreme Court has held that due process does not require federal law enforcement officers to obtain a warrant prior to seizing property they have probable cause to believe is subject to forfeiture to the United States because the property has been used to facilitate the possession of drugs. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 676–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974). The Court held that "immediate seizure of a property interest, without an opportunity for a prior hearing, is constitutionally permissible" where the seizure is necessary to " 'secure an important governmental ... interest,' " a " 'special need for very prompt action' " exists, and, finally, that " 'the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.' " *Id.* at 678, 94 S.Ct. at 2089 (quoting *Fuentes v. Shevin,* 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972)).

In the Court's view, the forfeiture statute provided the owner of the property all of the process that it was due. Due process is satisfied if the government is required to have a sound basis for believing that the property is forfeit,

and the owner has a fair opportunity to regain it.

It follows that a warrantless seizure that is fundamentally fair in a due process sense is also reasonable under the fourth amendment because the interests protected by both due process and the fourth amendment are parallel. Both due process and fourth amendment analysis balance the governmental interest against the owner's rights in the property. *Cf. G.M. Leasing Corp. v. United States,* 429 U.S. 338, 352 n. 18, 97 S.Ct. 619, 628 n. 18, 50 L.Ed.2d 530 (1977).

13. Appellants' property interest in the seized automobiles is, at best, tenuous. Under 21 U.S.C. § 881(h) (1982), all of appellants' "right, title, and interest in [the automobiles] vest[ed] in the United States" at the moment appellants used them to facilitate the drug trafficking involved in this case. 21 U.S.C. § 881(h) (Supp. IV 1986).

14. We emphasize again, as we have in the text, that appellants do not contend that the automobiles were seized from a place where appellants had a reasonable expectation of privacy. Had the agents entered such a place in order to seize the automobiles, a different case would have been presented.