**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Toby JOHNSON, Defendant–Appellant.**

No. 92-8049.

United States Court of Appeals,
Tenth Circuit.

May 19, 1993.

Daniel J. Sears, Denver, CO, for defendant-appellant.

Lisa E. Leschuck, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with her on the brief), Cheyenne, WY, for plaintiff-appellee.

Before SEYMOUR and KELLY, Circuit Judges, and LEONARD, District Judge.[†]

† The Honorable Timothy D. Leonard, United States District Judge for the Western District of Oklahoma, sitting by designation.

PAUL KELLY, Jr., Circuit Judge.

Defendant-appellant Toby Johnson was convicted of transporting animal parts after illegal importation, 18 U.S.C. § 545, illegal possession of a jaguar skull, 16 U.S.C. § 1538(c)(1), illegal possession of migratory birds, 16 U.S.C. §§ 703 & 707(a), and obstruction of justice, 18 U.S.C. § 1503, and was sentenced to fifteen months in prison and fined $7,500. He appeals his conviction, the district court order vacating his guilty plea, evidentiary rulings, and his sentence. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and we reverse.

## Background

On August 14, 1989, state and federal agents, following a federal lead, visited Mr. Johnson's taxidermy shop, allegedly in order to interview him and inspect the shop. Mr. Johnson was out of the country. The agents showed an employee a statute that authorized a state inspection, and three state agents and one federal agent began to search the premises. The agents then discovered specimens of federally protected migratory birds.

Further investigation led to the issuance of a five-count indictment and superseding indictment including felony charges. Defendant initially entered a guilty plea to several pre-Sentencing Guideline misdemeanors pursuant to a plea agreement before a magistrate. However, the district judge sua sponte withdrew the reference from the magistrate and vacated the plea as involuntary after reading a newspaper article which reported that Mr. Johnson viewed his plea as coerced. The district judge ordered the case to trial, all without benefit of hearing from Mr. Johnson. Mr. Johnson protested after the fact. He also moved to suppress evidence, which motion was denied after a hearing. Mr. Johnson was convicted by a jury on all counts.

## Discussion

Mr. Johnson raises two arguments of note. While Mr. Johnson fails to recognize that the district court may withdraw misdemeanor proceedings from the magistrate under 18 U.S.C. § 3401(f), he does argue that due process and Fed.R.Crim.P. 43(a) preclude sua sponte vacation of his guilty plea (on the grounds that his statements at the former plea hearing were involuntary) without his presence and an opportunity to be heard. *See Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); *Larson v. Tansy,* 911 F.2d 392 (10th Cir.1990); *United States v. Gonzalez–Mercado,* 808 F.2d 796 (11th Cir.1987).

■ Mr. Johnson also claims that the inspection of his business was an investigatory search for which a warrant was required, and that the resulting evidence should have been suppressed. *See Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). Because this issue appears dispositive, we address it only.

In reviewing the trial court's denial of a motion to suppress, we examine the court's findings of fact for clear error, viewing all facts in the light most favorable to the government, but review de novo questions of law and the reasonableness of the search. *United States v. Laboy,* 979 F.2d 795, 798 (10th Cir.1992).

■ Mr. Johnson, as the owner of a closely regulated business, was subject to regulatory inspections. *See New York v. Burger,* 482 U.S. 691, 699–701, 107 S.Ct. 2636, 2642–43, 96 L.Ed.2d 601 (1987). Such warrantless inspections are deemed reasonable under the Fourth Amendment when performed pursuant to a plan which incorporates specific and neutral criteria. *Id.* at 702–03, 107 S.Ct. at 2643–44; *Torres v. Puerto Rico,* 442 U.S. 465, 473, 99 S.Ct. 2425, 2431, 61 L.Ed.2d 1 (1979). Although the government may address a problem in a regulated industry through administrative and penal sanctions, *Burger,* 482 U.S. at 712, 107 S.Ct. at 2649, an administrative inspection may not be used as a pretext solely to gather evidence of criminal activity. *See Burger,* 482 U.S. at 716, 107 S.Ct. at 2651; *Abel,* 362 U.S. at 225–26, 80 S.Ct. at 690–91. *See also Michigan v. Tyler,* 436 U.S. 499, 507–09, 98 S.Ct. 1942, 1948–50, 56 L.Ed.2d 486 (1978). Rather, a warrant issued on probable cause by a neutral magistrate is required. *Donovan v. Dewey,* 452 U.S. 594,

598 n. 6, 101 S.Ct. 2534, 2538 n. 6, 69 L.Ed.2d 262 (1981); *Tyler*, 436 U.S. at 512, 98 S.Ct. at 1951.

■ We begin with the proposition that "[t]he discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal...." *Burger*, 482 U.S. at 716, 107 S.Ct. at 2651. Whether an administrative search is a pretext for a criminal investigation is a factual question. *Abel*, 362 U.S. at 225–30, 80 S.Ct. at 690–93. We review the record as a whole to determine whether the district court's apparent finding that the administrative search was not a pretext for a criminal investigation is supported by the evidence. *Id.*

Upon such review, we hold that the administrative search was employed solely as an instrument of criminal law enforcement. The uncontroverted facts establish that the federal agent used the state inspection as a pretext for a broad investigatory search. We have not been cited to any federal statute that authorizes a warrantless inspection of taxidermists. A Wyoming statute authorizes inspections of taxidermists, but only when performed by state agents. Wyo.Stat.Ann. § 23–6–111 (1977).

The federal agent had a lead to interview Mr. Johnson concerning a federal smuggling investigation. Aplee.Supp.App. at 256. The federal agent initiated contact with a state agent and asked the state agent to accompany him on the interview. *Id.* at 246, 257. The state agent had not participated in the federal smuggling investigation and had no knowledge of the facts of that investigation. *Id.* at 247, 251, 253–54. The government, which had the burden of proof, offered no evidence as to why the federal agent wanted the state agent to participate in this investigation, let alone conduct a taxidermy search.

After the state agent agreed to accompany the federal agent, the state agent decided to conduct a taxidermy inspection solely because the federal agent would be questioning Mr. Johnson. *Id.* at 235. The state agent testified that he visited taxidermy shops "periodically maybe once a year, maybe twice a year," and that he typically dealt "with the game-tag issue and with the licensing proce-

dure on a yearly basis." *Id.* at 234. The state agent had inspected Mr. Johnson's shop earlier in the year. *Id.* at 235. He had never conducted an inspection of this magnitude (accompanied by three agents) in Sheridan, however.

■ The federal agent drove 300 miles to Mr. Johnson's place of business in Sheridan with no knowledge of whether Mr. Johnson was available for questioning, the ostensible purpose of his trip. In fact, Mr. Johnson was in Australia. Once on the premises, the federal agent actively participated in the search, transforming the state inspection into a federal investigatory search. *Id.* at 258. Contrary to the district court's order, Wyo. Stat.Ann. § 23–6–111 did not authorize a federal officer to inspect Mr. Johnson's shop. *Id.* at 280.

The district court remarked that the federal agent went to Mr. Johnson's shop for "another purpose and that the state people came along for the purposes of making an inventory search of the licensee." *Id.* at 268. However, given the uncontradicted evidence that the federal agent initiated the operation, the district court did not address whether the sole purpose of the inventory search was to facilitate a federal criminal investigation. In other words, the district court failed to address the relationship between the federal criminal investigation and the state regulatory search, the reason why they occurred simultaneously, or the significance of the federal agent's active participation in the search once it was apparent that he could not conduct an interview with Mr. Johnson.

■ On this record, such a course appears objectively unreasonable and not in accord with usual practice. *See United States v. Martinez*, 983 F.2d 968, 972 (10th Cir.1992). Because the evidence uniformly establishes that the federal agent initiated this operation for federal law enforcement purposes, a remand is unnecessary, and we conclude that the warrantless search was unreasonable. The presence and active participation of the federal agent during the search of Mr. Johnson's shop, and the federal agent's insistence that the state agent accompany him establish as a matter of law that

the federal agent used the state regulatory inspection as a pretext for an investigatory search. Federal agents may not cloak themselves with the authority granted by state inspection statutes in order to seek evidence of criminal activity and avoid the Fourth Amendment's warrant requirement.

REVERSED.