**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**DeMario Quintrell ALLEN,**
**Defendant–Appellant.**

**No. 01–1323.**

United States Court of Appeals,
Tenth Circuit.

Aug. 16, 2002.

Richard T. Spriggs, Asst. U.S. Attorney, William Lewis Taylor, United States Attorney's Office, Denver, CO, for Plaintiff–Appellee.

Richard N. Stuckey, Denver, CO, for Defendant–Appellant.

Before EBEL and HENRY, Circuit Judges and ANDERSON, Senior Circuit Judge.

### ORDER AND JUDGMENT *

HENRY, Circuit Judge.

DeMario Quintrell Allen, appealing his conviction for violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (possession of a firearm by a convicted felon), argues that the district court erred in failing to suppress evidence of the firearm that underlies his conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because we conclude that the district court did not commit clear error in concluding that (1) the search that uncovered the firearm was

---

\* This order and judgment is not binding precedent, except under the doctrines of res judicata, collateral estoppel, and law of the case. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

conducted pursuant to standardized procedures and (2) the primary purpose of the search was administrative, and because we further conclude that the given search therefore qualifies as an inventory search, we affirm.

## I. BACKGROUND

In the early morning hours of January 9, 2001, police officers arrested the two occupants—Mr. Allen and Todd Gregor—of a particular automobile. Because the automobile did not belong to either Mr. Allen or Mr. Gregor, Officer Steven Currier ordered the vehicle's impoundment. In completing an inventory form that asked for a description of the reasons for the automobile impound, another officer, Officer Joe McIntyre, checked two boxes: one marked "arrest" and one marked "evidence." Aplt's Br. Attach. IV (Fountain Police Dep't Impound/Recovery Report, dated Jan. 9, 2001).

Before having the vehicle towed to the automobile impound lot, Officer McIntyre searched the vehicle. Officer McIntyre's search followed the over-the-radio comments of another officer, possibly an Officer Donald McDonald, that the given vehicle should be "gone over with a fine tooth comb." *Id.* Attach. II, at 4 (Tr. of Dispatch Tape, dated Jan. 9, 2001). Officer McIntyre's search of the vehicle uncovered the firearm the possession of which underlies Mr. Allen's conviction in this case.

Arguing that the automobile search violated his Fourth Amendment rights, Mr. Allen sought to suppress evidence of the firearm uncovered during that search. The district court, however, (1) concluded that Officer McIntyre recovered the firearm during the execution of a valid inventory search and (2) thus denied Mr. Allen's motion to suppress.

Mr. Allen subsequently pleaded guilty. In so doing, Mr. Allen reserved the right to appeal the district court's suppression decision. Mr. Allen now challenges that suppression decision via this direct appeal.

## II. DISCUSSION

### A. The Standard of Review, the Legal Standard Governing Inventory Searches, and the District Court's Factual Findings

We review the ultimate Fourth Amendment question here presented—whether the automobile search constituted a proper 'inventory search'—de novo; in so doing, however, we review the relevant district court findings of fact only for clear error. *See United States v. Souza,* 223 F.3d 1197, 1201 (10th Cir.2000) ("Although we review the ultimate Fourth Amendment question de novo, the district court's factual determinations are reviewed only for clear error."). Clear error exists where a particular factual determination lacks any basis in the record, *see United States v. Boyd,* 289 F.3d 1254, 1258 (10th Cir.2002) ("A court is ordinarily limited by the record before that court; thus, a district court's finding of fact is clearly erroneous where not based on record evidence."), or otherwise leaves the reviewing court with a "definite and firm conviction that a mistake has been committed," *Easley, Governor of N. Carolina v. Cromartie,* 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001) (internal quotation marks omitted).

Ordinarily, of course, police officers must obtain a warrant before searching an individual's belongings. Over the years and particularly in regard to automobiles, however, a number of exceptions to the warrant requirement have emerged. One such exception pertains to 'inventory searches.'

Where the police lawfully impound particular property, the police are entitled to

perform an administrative search of the property in order to inventory the contents of that property. *See Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) ("[I]nventory searches are now a well-defined exception to the warrant requirement."); *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (approving an inventory search where "there [was] no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive"). In order for a search to qualify as a proper inventory search, the search (1) must be "conducted according to standardized procedures," *United States v. Haro–Salcedo*, 107 F.3d 769, 772 (10th Cir.1997); *see also United States v. Edwards*, 242 F.3d 928, 938 (10th Cir.2001) (requiring that the inventory search be conducted "as part of regular procedures"), and (2) "cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings," *Edwards*, 242 F.3d at 938; *see also Haro–Salcedo*, 107 F.3d at 772–73 ("An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory.").

Here, the district court concluded that the search of the automobile from which the police arrested Mr. Allen constituted a proper inventory search. In the process of reaching that conclusion, the district court determined that (1) "[t]he City of Fountain has an impound policy in writing" (2) "the impound policy clearly permit[ted] the [impoundment of the vehicle at issue in this case]," (3) the City of Fountain "has a consistent practice, which . . . amounts to a policy, that any time an impound is done, it is accompanied by an inventory search," and (4) the "primary purpose of the search" was administrative.

Rec. vol. III, at 174, 176 (Hr'g Tr., dated Apr. 12, 2001). These district court determinations constitute findings of fact. *See, e.g., United States v. Johnson*, 994 F.2d 740, 743 (10th Cir.1993) ("Whether an administrative search is a pretext for a criminal investigation is a factual question.").

**B. Our Analysis**

We conclude (1) that, because ample record evidence supports each of these findings of fact, none of the findings is clearly erroneous and (2) that, in light of those facts, the district court correctly determined that the contested search constituted an inventory search.

It is true that, as Mr. Allen notes and as the district court acknowledged, the "fine tooth comb" comments attributed to Officer McDonald do suggest an investigatory purpose. Additionally, Officer McIntyre's selection of the "evidence" box on a form listing possible reasons for the vehicle's impoundment and the fact that Officer McIntyre performed the search before the car was actually towed to a police impound lot further suggest, to at least some extent, that the primary purpose of the search was investigative rather than administrative.

Nevertheless, the district court's determination otherwise is not clearly erroneous; ample evidence supports the district court's determination that the "primary purpose" of the search was administrative and thus that the search qualified as an inventory search. First, Officer Currier testified that "I was the [officer] who made the decision to impound the vehicle," Rec. vol. III, at 71 (Hr'g Tr., dated Apr. 12, 2001) (Test. of Officer Currier), and "when we do an impound on [a] vehicle, . . . it's in our policy that we will do a search of the vehicle for all [the] stuff inside before it's impounded," Rec. vol. II, at 32 (Hr'g Tr.,

dated Mar. 15, 2001) (Test. of Officer Currier). Second, Officer McIntyre explained that (1) "[w]e do have [a] city ordinance [Fountain Municipal Ordinance 10.12.010] . . . [that] states out the many instances in which we can impound a vehicle," including "any time that a driver is arrested," Rec. vol. III, at 102 (Hr'g Tr., dated Apr. 12, 2001) (Test. of Officer McIntyre), (2) "[i]t's required we do an inventory of every vehicle that we impound," *id.* at 107, and (3) the inventory is typically taken "[o]n the scene" to ensure that the private tow truck drivers utilized by the City have not "tak[en] something from out of the vehicle," *id.* at 108. Third, Officer McIntyre checked not only the "evidence" box as a reason for the vehicle's impoundment but also the "arrest" box. Aplt's Br. Attach. IV (Fountain Police Dep't Impound/Recovery Report, dated Jan. 9, 2001).

As the district court reasoned:

On the whole, although the evidence is not 100 percent consistent, nor does it point entirely in one direction, I'm satisfied that the search at the scene was a proper administrative search, commonly called an inventory search.

It is true that one of the officers, Officer McDonald, is heard on the radio to say, we're going to have to go over the vehicle with a fine-tooth comb. And one might draw the inference from that, that the inventory search was only a ruse. Officer McDonald, however, was not on the scene at the time, and both of the other officers [Officers Currier and McIntyre] testified that his comment had no effect on their thinking as to why they were searching the vehicle.

It is also true that the evidence box is checked. The evidence is not entirely consistent as to how it got checked and when it got checked. By the evidence box, I mean the box on the inventory form, which is Exhibit 6, stating why the vehicle was being impounded.

I suppose it's almost inevitable, in any case where an inventory search is undertaken, especially in this context, where the officers are thinking there may be criminal activity afoot, that the search, not surprisingly, may turn up evidence, and the officers are aware of that.

. . . .

The City of Fountain has an impound policy in writing, and it has a consistent practice, which, as I've said, amounts to a policy, that at any time an impound is done, it is accompanied by an inventory search. I think consistent with that policy is the fact that it maintains regular forms for an inventory search in these circumstances.

So on the whole, I find—I'm satisfied that this was an inventory search.

Rec. vol. III, at 175–76 (Hr'g Tr., dated Apr. 12, 2001).

Having concluded that ample record evidence supports each of the district court's relevant findings of fact, we consider, de novo, the ultimate Fourth Amendment issue presented by this case: whether the given facts establish that the automobile search qualified as an inventory search. Here our conclusion is relatively straightforward. Since (1) the Fountain Police Department maintained both "an impound policy in writing"—a policy that permitted vehicle impoundment under the circumstances of this case—and "a consistent practice, which . . . amounts to a policy, that at any time an impound is done, it is accompanied by an inventory search" and since (2) the primary purpose of the contested search was administrative rather than investigatory, we agree with the district court that the given search qualifies as an inventory search. *See Edwards*, 242 F.3d at 938 ("An inventory search conduct-

ed as part of regular procedures, and for administrative rather than investigatory purposes, does not require a warrant.").

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Allen's conviction and sentence.